Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com


# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK


EDWARD F. HAAS, Individually, :
and on behalf of others :
similarly situated, :
                            :
           Plaintiff, :           ECF CASE
vs. :
                            :
CARLOS M. GUTIERREZ, :
  Secretary, U.S. Department :     DOCKET No. 07 CIV 3623 (VM)
  of Commerce; :
WILLIAM A. JEFFREY, Director, :
  National Institute of Standards :
  and Technology (NIST); :        MAY 9, 2007
DR. SHYAM SUNDER, Lead :
  Investigator of NIST, WTC :
  Investigation; :
DR. THERESA McALLISTER, :      **FIRST AMENDED COMPLAINT**
  Research Structural :         **INJUNCTIVE AND**
  Engineer, NIST; :           **DECLARATORY RELIEF,**
CATHERINE FLETCHER, Chief, :   **ATTORNEY'S FEES, COSTS OF SUIT**
  Management and Organizational:           **PER**
  Division, National Institute :   **BIVENS v. SIX UNKNOWN AGENTS,**
  of Standards and Technology :    **403 U.S. 388, 390-97 (1971),**
  (NIST); :                  **AND**
APPLIED RESEARCH ASSOCIATES, :  **ADMINISTRATIVE PROCEDURE ACT,**
  INC.; SCIENCE APPLICATIONS :    **5 U.S.C. § 551 et seq., and**
  INTERNATIONAL CORP.; :        **5 U.S.C. § 701 et seq.**
  SILVERSTEIN PROPERTIES; and :
JOHN DOE I-V, Contractors, :
  Employed by NIST, :
                            :
          Defendants. :

I.

<u>Nature of Action</u>

1.   This action is brought pursuant to (a) <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388, 390-97 (1971) (<u>Bivens</u>), for (i) violations and threatened violations of the plaintiff's rights to Due Process under the Fifth Amendment to the United States Constitution; and (ii) violations and threatened violations of the plaintiff's rights pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"); and (iii) in furtherance of plaintiff's rights to seek administrative review, including that of injunctive relief and/or a delay in conducting further challenged administrative agency action as per 5 U.S.C. § 701 et seq.

2.   Plaintiff has submitted a Request for Correction (RFC) under and pursuant to the Data Quality Act (DQA), per Section 515 of Public Law 106-554, which said RFC has been pending within that certain department of the United States Department of Commerce known as the National Institute for Standards and Technology

I.

(NIST), from on or about February 28, 2007 through and including the present a period of time that exceeds sixty (60) days.

3.    Per the published Rules and Regulations found at http://www.nist.gov/director/quality_standards.htm, plaintiff should have been informed as follows:

"3.    The division Chief will communicate his/her initial decision or the status of the request through the NIST OU Deputy Director to the Chief, NIST Management and Organization Division, who will communicate the initial decision to the requester, usually with 60 calendar days of NIST's receipt of the request.

4. The initial decision or status update will contain the name and title of the Division Chief and a notice that the requester may appeal an initial denial to the NIST Deputy Director (with the name, title, and address of that official), pursuant to paragraph III.D.1. below, within 30 calendar days of the date of the initial denial." (Excerpted from National Institute of Standards and Technology Guidelines, Information Quality Standards, and Administrative Mechanism)

As of the date hereof NIST is in breach of the quoted regulation in that plaintiff has not been informed of the status of his said pending RFC.

4.    In the interim, however, NIST has published information indicating it is working on finalizing a report on what caused the 6.6 second collapse of World Trade Center building number 7 (WTC7), which building was seen in video to have been destroyed, from tippity top to utter bottom, via live video taped television programming, in the said 6.6 second time interval occurring at

3

approximately 5:20 PM on September 11, 2001.  As of that date and time, WTC7 joined the 110-story World Trade Center Twin Towers, that had been known as World Trade Center building 1 (WTC1) and World Trade Center building 2 (WTC2), respectively, for address purposes, as the only three steel-reinforced skyscrapers ever to have self-destructed, from top to bottom, in a matter of mere seconds; except, that is, such structures as had been intentionally demolished by way of controlled demolition procedures and/or destruction resulting from warfare or military means.  Moreover, even as to such structures, the previous world's record height for even the controlled demolition of a building was only 439 feet, the height of the 25-story J. L. Hudson department store building in Detroit, MI.  See:

http://www.infoplease.com/askeds/tallest-building-demolished.html

> "According to the Guinness Book of World Records, the tallest building demolished by explosives was the former J. L. Hudson Department Store in Detroit, MI.  It stood at 439 feet when it was imploded on October 24, 1998."

Note, too, that controlled demolitions are not foregone conclusions and they are not easy to accomplish.  The higher the building is, the more likely it is that something will go awry. With respect to the J. L. Hudson building, we are told:

> "Complicating the implosion, engineered by Controlled Demolition Inc. (CDI) of Phoenix, MD, was the fact that construction of the building occurred in 12 stages between 1911-46 and no structural drawings of the building existed.

4

But the record-setting implosion went off without a hitch. The roughly 2,728 lbs. of explosives placed inside the building reduced it to piles of debris in a matter of seconds."

Thus the implications here are clear:  On 9/11/01 not one, not two, but three, modern, steel-reinforced skyscrapers fell into their own foot-prints in nearly perfect, controlled demolition-like fashion.  Each one far exceeded the previous world-record heights for a controlled demolition…

The focus herein is WTC7.  The observed demolition of that building demonstrated a near text-book quality demolition as per what the naked eye could see.  Yet, after all this time, NIST has neither issued a report nor even responded to plaintiff's RFC. The elements of deprivation of right are clear and apparent, justifying the injunctive relief here sought.

For the record, WTC7 stood 570 feet in height and was 47 stories. It was, then, significantly taller, with nearly double the number of floors in comparison with Hudson's.

5.    It was not until in or about the month of September, 2005, that NIST issued a final report on what it alleged caused the "initiation" of what it called the "collapse" of WTC1,2. NIST's said report is commonly known as and referred to as NCSTAR 1 and can be accessed at: http://wtc.nist.gov/reports_october05.htm.

6.    To this day, NIST has not yet issued any report on what caused the 6.6 second destruction of WTC7, but has issued certain interim public statements confirming that it is in the process of working on issuing a report on what caused the destruction of WTC7.

7.    In or about the month of October, 2006, approximately (6) months ago, NIST, for the first time, issued a publicized report that it is to consider "hypothetical blast events" as a possible causal factor in the destruction of WTC7.  Said publicly disseminated information can be found at

http://wtc.nist.gov/media/WTC7_Approach_Summary12Dec06.pdf

8.    The summary found at the link listed above in paragraph 7. states at pg. 11 thereof a materially false statement to wit: "While NIST has found no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios…".  That statement is materially false because it stands in clear, palpable, direct and blatant contradiction of the statement acknowledging and admitting that WTC7 was felled by controlled demolition which statement was made by Larry Silverstein, a principal of defendant Silverstein Properties, in a publicly disseminated video statement airing on the US Public Broadcasting System, in which Larry Silverstein stated, and we quote him verbatim:

"I remember getting a call from the er, fire department commander, telling me that they were not sure they were gonna

be able to contain the fire, and I said, 'We've had such terrible loss of life, maybe the smartest thing to do is pull it.'  And they made that decision to pull and we watched the building collapse."

As Silverstein Properties is or was a consultant for NIST under and pursuant to the preparation of NCSTAR 1, it is utterly incongruent, inconsistent and incomplete for NIST to declare it has no evidence of controlled demolition when, in fact, it has actively consulted with a party who has admitted just that.  In addition, said admission, and NIST's misleading and fraudulent declaration that it has no evidence of controlled demolition, confirms the existence of a clear and palpable conflict of interest mandating the injunction here sought.

9.    Plaintiff's RFC goes to the essence of the defendant, NIST's improper lack of treatment of the issue of controlled demolition with respect to WTC7.

10.   Based on the amount of time that has already elapsed since the 6.6 second top to bottom destruction of WTC7 on the afternoon of September 11, 2001, it is acknowledged that it is in the public interest to have a report on that event issued. However, the same could be said for anytime after, roughly, 90 days from the event itself in that one can safely assert that 90 days should have been a reasonable time to issue an official report on an event that is both as important and as anomalous as is the complete and utter destruction of a skyscraper in a matter

of seconds where such skyscraper had not been hit by either an acknowledged bomb or by an apparent jetliner or by anything else. Yet it fell right straight down, looking for all the world to see, like a controlled demolition.  It should not take any competent group of investigators six (6) years to determine the destruction of WTC7 was a controlled demolition.  Yet, despite the interest and the urgency in needing to know how on earth such an event could have happened, promptly, we are now nearly six (6) years' time from the event and it is only with the last one-hundred-twenty (120) days, or so, that NIST has even acknowledged it might need to look into "hypothetical blast events".  Based upon the confirmed and verifiable facts here asserted, a delay in the further processing, by NIST, of analytical work pending resolution of plaintiff's RFC is plainly meritorious and just.  Plaintiff's RFC alleges the existence of conflicts of interest and other elements found that may be dispositive of a) why it has taken so long; b) why the obvious evidence of controlled demolition has been: i) hidden; ii) ignored; and iii) downplayed.

11.  Annexed hereto as Exhibit A is a copy of plaintiff's RFC, appended to a request for negotiations addressed to NIST's Deputy Chief Counsel for Technology, Attorney Melissa Lieberman, that sought negotiations for forbearance of further work done on analyzing what caused the 6.6 second destruction of WTC7 pending outcome of plaintiff's RFC.

12.  To date, there has been neither acknowledgment nor reply from NIST via either defendant, Catherine Fletcher, Deputy Chief Counsel Lieberman, nor anyone else in apparent authority at NIST.

13.  In any event, and as indicated, Deputy Chief Counsel Lieberman has not responded to the request for negotiations heretofore submitted with respect to forbearance on further assessment by NIST of what caused the near instantaneous destruction of WTC7.

14.  Based upon all of the foregoing, plaintiff herein asserts that:

15.  The Fifth Amendment's Due Process clause requires notice and the opportunity to be heard before NIST can continue to proceed on its investigation of what caused the near-instantaneous destruction of WTC7.

16.  NIST's lack of response is in violation of the APA's procedural requirements, and is arbitrary, capricious, and unreasonable in the circumstances here presented and is an abuse of discretion and otherwise not in accordance with law.

17.  In the DQA, Congress established a federal scheme that regulates the requirements and standards that information promulgated by agencies of the government of the United States, "Federal Agencies" must adhere to in order to assure that such information comports with quality standards.  When such information is deemed as "influential information" the

requirements for meeting quality standards are higher than they otherwise would be.  It is here asserted that the information that is to result from the analysis of what caused the near-instantaneous destruction of WTC7 will be deemed, under the DQA, to be "influential information."  Thus, plaintiff's RFC that alleges certain well-documented particulars as to how and why the information thus far released with respect to the investigation of WTC is internally inconsistent and fraught with obvious indicators of unlawful conflict of interest, all as more fully elaborated in Exhibit A, clearly mandates the relief to be requested herein.

18.  The claims in this complaint are cognizable under <u>Bivens</u> and the APA.

II.

<u>Parties</u>

19.  Plaintiff, Edward F. Haas, ["EFHaas"] is a United States citizen and a resident of the State of South Carolina.

20.  Defendant Carlos M. Gutierrez is the Secretary of Commerce of the United States. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

21.  Defendant William A. Jeffrey is the Director of the National Institute of Standards and Technology (as aforesaid, "NIST"). In that role, he is responsible for exercising the authority delegated by the Secretary of Commerce to enforce the

10

DQA. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

22.   Defendant Dr. Shyam Sunder is the Lead Investigator of the team designated to and charged with determining what caused the near-instantaneous destruction of WTC7.  As such, he is charged with conducting, and is authorized to direct the processes and procedures for and on behalf of NIST is furtherance of the WTC7 investigation. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

23.   Defendant Dr. Theresa McAllister is employed by NIST as a Research Structural Engineer and who is known to have responsibilities directly related to performance of work and tasks in furtherance of NIST's attempt to determine what caused the near-instantaneous destruction of WTC7, such as the first-time announcement made in or about the month of October 2006, that NIST would then investigate the possibility of "hypothetical blast events" as being causal of the near-instantaneous destruction of WTC7. Accordingly, Dr. McAllister appears to have significant responsibility for overseeing the work done in furtherance of the WTC7 investigation.  She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

24.  Defendant Catherine Fletcher is the Chief, Management and Organization Division of NIST charged with the acknowledgment of RFCs to the sender of said RFCs.  She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

25.  Defendant Applied Research Associates Inc. (ARA) is an "employee owned" corporation having its principal office and place of business at  4300 San Mateo Blvd. NE • Suite A-220 • Albuquerque, NM 87110 that currently operates ARA 73 offices in the United States and in Canada, some of which have classified computing and storage and military applications abbreviated as:

- SEI CMMI Certification
- SCIF facilities
- SIPRNET access

ARA also has:

- <u>Manufacturing/prototyping facilities</u>
- <u>Laboratories</u>
- <u>Testing facilities</u>

located in various states, including, without limitation, the States of Vermont, Florida, Colorado and Texas.  ARA, upon information and belief, manufactures or causes to be manufactured, develops and/or tests DEW that are operational in Earth orbit, at high altitude, low altitude, at sea and on land ranging in lethality from the capacity to do great damage, such as that of destroying the World Trade Center Twin Towers in less than 10

seconds each, as occurred on 9/11/01, down to and including imposition of a disabling stun on human beings for crowd control and/or other psy ops purposes.

26.  Defendant Science Applications International Corporation (SAIC) is a publicly traded company which has its principle office at SAIC Headquarters, 10260 Campus Point Drive, San Diego, CA 92121.  It has offices in 150 cities worldwide.  It describes itself as "one of the largest science and technology contractors to the U.S. Government" and provides services and products for "all branches of the U.S. military, agencies of the U.S. Department of Defense (DoD), the intelligence community, the U.S. Department of Homeland Security (DHS) and other U.S. Government civil agencies".  In January 2005, SAIC was awarded an Air Force Research Laboratory Contract for High Power Microwave Program (http://www.saic.com/news/2005/jan/03.html).  In 2005, SAIC also ran chemical oxygen iodine laser (COIL) at a branch of the Air Force Research Laboratory in Albuquerque, NM.

(http://www.saic.com/news/saicmag/2005-fall/directedenergy.html).  SAIC also engages in psy ops of the type that are intended to mislead the publics of targeted countries in furtherance, it would appear, of the Hobbesian principal that "in warre force and fraud are the cardinale virtues."  Be that as it may be from a philosophical perspective, embodying, as it does, the more commonly expressed notion that "might makes right", the DQA, by

its terms, prohibits the use of fraud in the preparation of
governmental documents and the provision of governmental services.
SAIC engaged in fraud, then, in the wrong place and in the wrong
context.  Between ARA and SAIC, some twenty-five (25) persons were
assigned to work on, by literally surrounding and, accordingly,
controlling and manipulating, NIST officials such that fraud, the
intended outcome, did, in fact, occur and will continue to occur
unless enjoined from doing so.  It is telling that the two
contractors who were most numerous among NIST's contractors were
those whose primary expertise is in weapon development and PSY OPS
respectively.  Small wonder, then, that NIST has found no evidence
of controlled demolition, irrespective of an admission to that
effect having been publicly made by a principal owner of the WTC
complex.

27.  Defendant Silverstein Properties has an office or place
of business at 250 Greenwich Street, 38th Floor New York City, NY
10007 and holds a leasehold interest in and to the WTC site.  As
such, this defendant had a clear conflict of interest in steering
the investigation away from any hint, suggestion, much less
conclusion that controlled demolition was a causal factor in the
destruction of WTC7.  Indeed, one anomaly that should be a hint
that something is amiss is that all buildings having an address
prefix of "World Trade Center," namely buildings 1 through and

including 7, were all completely and utterly destroyed on 9/11/01.
Yet, for as horrific as that destruction was, virtually all other
buildings in the area, some having a spatial relationship that was
as close or nearly so as the WTC buildings were, one to the other,
were not damaged very much at all, relatively speaking.   Upon
information and belief, Silverstein Properties benefited from an
insurance claim relating to the events of 9/11/01.   Upon
information and belief, at least two of the insurers found to have
been liable under their policies of insurance or of reinsurance
with respect to this defendant, have, nonetheless, questioned the
validity of the claim, based, in part, on the admission made by
Larry Silverstein that WTC7 was intentionally demolished, or words
to that effect as quoted above in paragraph 8; and, further based
on the as yet inadequate explanation of what did, in fact, cause
the destruction of the World Trade Center complex.   In that and in
other ways,  defendant chose to use its expertise to commit fraud
based on either withholding information or manipulating
information and by then accepting payment improperly.   Most
assuredly, this defendant has a clear, palpable conflict of
interest that would motivate it to manipulate and avoid any
consideration that controlled demolition might have been a causal
factor in the destruction of WTC7.

28.  Defendants John Does I - V are employed by NIST as contractors to prepare for and carry out the work being done and to be done in furtherance of NIST's ongoing investigation of the destruction of WTC7.  Plaintiff does not know, and the defendants have not revealed, their identities.

29.  The defendants are acting, and each of them at all times relevant hereto were acting, in their respective official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of federal law. Upon information and belief, unless preliminarily and permanently enjoined, the defendants, and each of them, intend to act in their respective official capacities and under the authority of federal law in carrying out the ongoing investigation of the destruction of WTC7, in violation of the plaintiff's constitutional and statutory rights.

III.

Jurisdiction and Venue

30.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States; Bivens, 403 U.S. at 390-97, in that it seeks to secure prospective, equitable relief directly under the Constitution, specifically the Fifth Amendment; under 28 U.S.C. § 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, in that one

purpose of this action is to secure preliminary and permanent injunctive relief. Judicial review of the agency action at issue is authorized by the APA, 5 U.S.C. §§ 702, 704 and 706.

31.  This Court has venue under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims made herein – i.e., the location of the building destroyed on September 11, 2001, namely, WTC7, took place in this District. Alternatively, this Court has venue under 28 U.S.C. § 1391(b)(3) because at least one of the defendants maintains an office in New York City.

IV.

Facts

32.  The plaintiff incorporates by reference all facts and allegations contained in paragraphs 1 through 31.

33.  The plaintiff filed an RFC under the DQA on or about February 28, 2007.  To date, there has been no reply or other acknowledgment by defendants or anyone acting on their behalf of receipt of plaintiff's said RFC.

34.  The defendants likewise rejected, by non-responsiveness, plaintiff's request for negotiations for forbearance that plaintiff had submitted on or about March 2, 2007, as per Exhibit B.

35.  On information and belief, the defendants and/or their agents may wish to continue disregarding plaintiff's RFC with the intent to issue a report on the destruction of WTC7 based on

continued adherence to the flawed premises and with the existing conflicts of interest, irrespective of plaintiff having now called attention to them, all as more fully articulated in Exhibit A hereof.

V.

## Exhaustion of Remedies

36.  Plaintiff EFHaas has exhausted his administrative remedies, having filed an RFC with NIST, in compliance with the DQA, challenging certain specific aspects of disseminated information and having made specific requests for relief that are presently pending, but which, even if favorably acted upon, would be rendered moot, absent a temporary order that would permit a determination of rights and of responsibilities in the present and before any further harm can be done; in other words, for prospective injunctive relief.

VI.

## First Claim: Violation of Administrative Procedure Act – Ultra Vires Agency Action

37.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 36.

38.  Under § 706(2)(c) of the Administrative Procedure Act, a reviewing court must set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations . . ." 5 U.S.C. § 706(2)(c).

39.  The regulations promulgated by the defendants to implement the DQA would be rendered moot in the absence of an agreed upon format for forbearance pending the completion of the RFC process presently pending before NIST.  Indeed, in the absence of such procedure for obtaining forbearance, it is clear that the DQA procedures currently followed by NIST are, were promulgated without any "statutory jurisdiction, authority, or limitations," and must therefore be set aside. 5 U.S.C. § 706(2)(c).

VII.

Second Claim: Violation of Administrative Procedure Act –
Agency Action That Is Arbitrary, Capricious, An Abuse Of
Discretion And Otherwise Not In Accordance With Law
In Promulgating DQA Regulations.

40. Plaintiff incorporates by reference the allegations of paragraphs 1 through 39.

41.  The APA imposes upon the defendants a number of nondiscretionary duties regarding rulemaking procedures. 5 U.S.C. § 553. The APA requires a federal agency to provide adequate notice to the public regarding the nature, scope and effects of any proposed or final agency action. The APA also requires that the federal agency provide the public with a full and fair opportunity to comment regarding any proposed agency action. Based upon the filing of his RFC on February 28, 2007, it is clear that even though he has done so, the absence of an agreement for forebearance by NIST pending the outcome of that RFC would render

his having filed it moot. The defendants have failed to respond adequately – or at all – to plaintiff's request to be heard on the issue of forbearance.

42.   The APA also requires a federal agency to fully articulate its basis and reasons regarding any final agency action. The defendants have failed to explain adequately the basis and reason(s) for not responding to plaintiff's request for negotiations concerning procedures pending the determination of plaintiff's RFC.

43.   The defendants' failure to comply with the APA's procedural requirements was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Therefore, in refusing to either negotiate with plaintiff concerning forbearance during the pendency of plaintiff's RFC, the defendants violated the APA, and their actions must be set aside.

VIII.

Third Claim: Violation of Administrative Procedure Act –
Arbitrary And Capricious Failure To Abide
By The Standards

44.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

45.   Now that plaintiff has filed an RFC, it should not be rendered ineffectual before it can even be determined.

46.   Regulations promulgated by NIST and/or the defendant U.S. Department of Commerce simply do not permit for a meaningful

consideration of RFC's in the absence of any procedure allowing for either mandatory or permissible forbearance from action pending the outcome of submitted RFCs.  Moreover, on information and belief, the defendants have arbitrarily and capriciously failed to exercise their authority to enforce the DQA, by not responding within sixty (60) days, either with respect to the DQA request and the investigation into what caused the destruction of WTC7.  Such arbitrary and capricious action violates the APA.

IX.

### Prayer for Relief

47. An order to prevent the defendants from violating the plaintiffs' rights under the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, the plaintiff requests that this Court grant preliminary and permanent injunctive relief barring the defendants from engaging in either all or some specifically designated portions of work on determining the causes of the near-instantaneous destruction of WTC7, until the outcome of plaintiff's presently pending RFC is known.

48.  The plaintiff is entitled to a preliminary injunction barring the defendants from engaging in certain additional work on determining the causes of destruction of WTC7 because:

(a) there is a significant likelihood that the plaintiff will prevail on the merits;

(b) the plaintiff will suffer irreparable harm if his RFC is allowed to languish while ongoing work on determining the causes of the destruction continue despite his having raised the serious concerns that he has raised that show how and in what manner that investigation is imperiled;

(c) there is a compelling public interest in ensuring that persons charged with engaging in work for and on behalf of the public not be allowed to steer investigations in a manner so as to produce a false, fraudulent and/or misleading outcome, as will almost certainly happen unless this Court requires that defendants cease and desist from certain designated activities in furtherance of the ongoing WTC7 investigation pending the outcome of plaintiff's presently pending RFC.

49.  Plaintiff further request that this Court grant declaratory relief by issuing an Order declaring that the defendants' current means, methods, practices, procedures, and customs regarding procedures under the DQA violate the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act.

50.  Plaintiff requests that this Court grant reasonable attorney fees pursuant to 42 U.S.C. § 1988 and the laws of the United States.

51.  Plaintiff requests that the Court grant such further relief as it deems just and proper.


                          THE PLAINTIFF

                          By_____
                          Jerry V. Leaphart JL4468
                          JERRY V. LEAPHART & ASSOC., P.C.
                          8 West Street, Suite 203
                          Danbury, CT 06810
                          (203) 825-6265 - phone
                          (203) 825-6256 - fax
                          jsleaphart@cs.com

Dated:    Danbury, CT
          May 9, 2007

# EXHIBIT A

Subj: Fwd: Request for Correction
Date: 03/02/2007 8:47:29 AM Eastern Standard Time
From: Jsleaphart
To: melissa.lieberman@nist.gov
CC: efhaas@comcast.net

Dear Deputy Chief Counsel Melissa Lieberman:

I write to provide you with an informational copy of REQUEST FOR
CORRECTION served upon NIST on 28 February, 2007 (RFC).  As noted
therein, the undersigned attorney represents Edward F. Haas.

As indicated more fully therein, the Requester, Edward F. Haas, asserts
that NIST should temporarily suspend further investigation of the causes
of the destruction in 6.6 seconds of WTC 7 pending the outcome of the
RFC because it raises issues that entail both information involving
issues of misrepresentation and of conflict of interest.

Prior to seeking legal redress to obtain an injunction, it is deemed
appropriate to request a voluntary, written agreement wherein NIST would
agree to cease and desist certain aspects of the WTC 7 investigation
pending the resolution of the RFC.

Accordingly, negotiations are hereby requested that would be for the
purpose of determining if an agreement can be reached on what aspects of
the ongoing WTC 7 investigation would be held in abeyance pending
resolution of the presently pending RFC.

Your timely reply to this request for negotiations would be appreciated.

Respectfully submitted,


Jerry V. Leaphart
counsel for Requester, Edward F. Haas

8 West Street
Suite 203
Danbury, CT 06810

p-203-825-6265
f-203-825-6256

-----------------
Forwarded Message:
Subj: Request for Correction
Date: 02/28/2007 9:21:17 PM Eastern Standard Time
From: efhaas@comcast.net
To: info.quality@nist.gov
CC: Jsleaphart@cs.com
Received from Internet: click here for more information

Edward F. Haas

1214 Sam Snead Drive

Mt. Pleasant, SC 29466

Office: (843) 278-5021

Mobile: (843) 817-9962

February 28, 2007

VIA EMAIL AND CERTIFIED MAIL RRR

Chief, Management and Organization Division
National Institute of Standards and Technology
100 Bureau Drive, Mail Stop 3220
Gaithersburg, MD 20899-3220
Email: info.quality@nist.gov

Re:Requests for Correction per Section 515 of Public Law106-554

Dear Chief, Management and Organization Division:

This is a matter involving the "information" that has been
"disseminated" that serves a useful purpose of making sure that the
ongoing investigation of what caused the destruction of World Trade
Center building number 7 (WTC7) complies with data and information
quality standards.  For all of the reasons set forth below in
conjunction with specific requests for correction, such standards are in
significant danger of being utterly and completely violated.

This request is submitted by Edward F. Haas (requester).  My address,
telephone number and email address are as set forth above.  In addition,
Attorney Jerry V. Leaphart represents me in this matter.  I request that
all subsequent replies be sent to both me and to my counsel whose
contact information is set forth below.

The requests for correction of information submitted hereunder are
submitted under Section 515 of Public Law 106-554.

The particular information disseminated that is the subject of the
request consists in:

CORRECTION REQUEST ISSUE 1

The information is identified and known as  "Federal Building and Fire
Safety Investigation of the World Trade Center Disaster WTC 7 Technical
Approach and Status Summary" and is dated as December 12, 2006.
(Information Item No. 1)

The source from which requester obtained the information is the NIST web
site at the following page:
http://wtc.nist.gov/media/WTC7_Approach_Summary12Dec06.pdf

Requester obtained the information from and after December 12, 2006 from
the said web page.  It is understood and acknowledged that said
information has been disseminated so as to provide a status of an
ongoing investigation, and that said investigation is seriously
imperiled by the incorporation of information that requires, at a
minimum, the corrections set forth and requested hereunder.

Requester submits this request on behalf of himself and other similarly
situated persons.  Requester is a citizen of the United States and
maintains a web site for the accurate dissemination and propagation of
governmental information.  Requester's business is in the nature of a
research and journalistic organization that has succeeded in providing
citizens of the United States with timely information concerning the
function and the operation of various governmental agencies that are
charged by their enabling legislation, rules and regulations of
conducting certain duties in and for the public interest, of which and
about which each citizen has a vital interest.

As indicated, this request is to be understood as being submitted by
requester in his said capacity and either additionally or alternatively
on behalf of other similarly situated persons who are too numerous to
quantify or specifically name.  Requester is adversely affected by the
ongoing threat of promulgation of information that is in need of
correction because the present course of action may result in the
further concealment of serious wrongdoing.

Specifically, Information Item No. 1 fails to comply with applicable
information quality guidelines and standards in a number of particular
ways, including, but not limited to inclusion of the following
demonstrably false statement found at page 11 of Information Item No. 1:

"NIST is analyzing scenarios for the event that initiated the collapse
of WTC 7. As a part of this work, NIST is considering whether
hypothetical blast events could have played a role in initiating the
collapse. While NIST has found no evidence of a blast or controlled
demolition event, NIST will estimate the magnitude of hypothetical blast
scenarios that could have led to the structural failure of one or more
critical elements as a result of blast." (Bold emphasis added)

Requester asserts that the quoted information is demonstrably false and
misleading and must be corrected, together with other information that,
at present, also contains false and misleading statements.  Said
information is false in and as a result of the following particulars:

NIST's NCSTSAR 1 report, issued in or about the month of October 2005,
contains the following statement that must be deemed applicable to the
ongoing investigation of what caused the 6.6-second destruction of WTC
building 7 and to Information Item No. 1:

"NIST found no corroborating evidence for alternative hypotheses
suggesting that the WTC towers were brought down by controlled
demolition using explosives planted prior to September 11, 2001." (Bold
emphasis added)

It is to be noted that NCSTAR 1 repeats the above quoted phrase in no
fewer than three widely separated passages of that document; namely:
pgs xxxvii, 146, and 176, respectively.

Separate and apart from an analysis of the context in which the quoted statement is to be found, there exists a profound difference between the quoted statement and the statement that is now found in connection with the ongoing work of determining what caused the symmetrical, 6.6 second destruction of WTC 7 and quoted above; namely, the quoted statement from page 11 of Information Item No. 1 that completely contradicts the quoted portion of NCSTAR 1.  For purposes of clarity and ease of comparison the two different and mutually contradictory statements are set forth below, one right after the other:

Pg. xxxvii of NCSTAR 1 states:

"NIST found no corroborating evidence for alternative hypotheses suggesting that the WTC towers were brought down by controlled demolition using explosives planted prior to September 11, 2001."

But, Pg. 11 of "Federal Building and Fire Safety Investigation of the World Trade Center Disaster WTC 7 Technical Approach and Status Summary" of December 12, 2006 states, in specifically relevant part:

"While NIST has found no evidence of a blast or controlled demolition event…"

It is seen, therefore, that NIST is making a decidedly different claim now where the previously published concept of no "corroborating evidence" of a certain, specifically limited type of controlled demolition; namely, a controlled demolition brought about by a highly specific factual subset – explosives planted prior to September 11, 2001 – has been morphed, changed and broadened far beyond what NIST previously said lacked corroboration into a blanket statement that NIST has found no evidence of a blast or controlled demolition event.

That statement is false and must be corrected.

The distinctions here articulated are significant and substantial.  They make a difference.

The statement "corroborating evidence," by definition, indicates there was some evidence of controlled demolition as, indeed, the <10-second, complete, total annihilation of the two WTC towers is, in and of itself, evidence of controlled demolition.  Indeed, NIST, in articulating the lack of "corroborating evidence" also contributed to the present need for correction because, to requester's knowledge, NIST does not reveal the details regarding what evidence there was that was not "corroborated".

NIST, then, should correct NCSTAR 1 by articulating what evidence it had that it could not corroborate.

Thus, this request for correction should be understood to entail, contain and include a request for correction of NCSTAR 1 in conjunction with and as a necessary adjunct to the correction of Information Item No. 1 that pertains to the ongoing investigation of the destruction of WTC 7.

NIST has also plainly acknowledged that it did not investigate what it defined as the "event of collapse" as is plainly admitted in footnote 2 of the Executive Summary of NCSTAR 1 where the following quotation is to be found:

"The focus of the investigation was on the sequence of events from the instance of aircraft impact to the initiation of collapse for each tower.  For brevity in this report, this sequence is referred to as the "probable collapse sequence," although it does not actually include the structural behavior of the tower after the conditions for collapse initiation were reached and collapse became inevitable."  [See NCSTAR 1, pgs xxxvii, footnote 2 and/or 82, footnote 13] (Bold emphasis added)

Thus, it is quite clear that had NIST claimed there was "no evidence" of controlled demolition of the WTC towers, NCSTAR 1 would have been criminally fraudulent on its face had it attempted, on one hand, to acknowledge no investigation was done of what occurred during the actual destruction phase of the buildings and then claimed, on the other, that it lacked evidence of what it did not investigate.

Indeed, one reason why NIST could not "corroborate" evidence of controlled demolition is that it did not look for it.  This is something that NIST must now specifically acknowledge so as not to continue misleading the public.

Accordingly, let this request for correction also serve to place NIST on notice that any further refusal by NIST to acknowledge that it cannot rule out the possibility of controlled demolition or otherwise state that it has found no evidence of controlled demolition in a context that suggests that it had looked for and did not find such evidence may be considered as indicative of fraud and of deception.

NIST cannot now state it has found no evidence of controlled demolition because that is decidedly not what it previously stated; and, in any event, having not looked for such evidence in the time and place where it might have been found, NIST must further correct the record.

In furtherance of the burden of proof that I, the affected person, have in this correction request, I hereby state that the ordinary meaning of the words and the phrase "corroborating evidence" as taken from the American Heritage Dictionary where the entry for corroborating states, and I quote: cor·rob·o·rate tr.v. cor·rob·o·rat·ed, cor·rob·o·rat·ing, cor·rob·o·rates: To strength or support with other evidence, make more certain.  See Synonyms at confirm.

Strengthen and support with other evidence.  NIST cannot continue on its present fraudulent path.  It is fraud to now say there was no evidence of controlled demolition when NIST previously stated something entirely different.

This conflict in publicly disseminated information compels NIST to issue a correction forthwith.

In its investigation of the destruction of WTC1 and WTC2, NIST failed to explore a controlled demolition hypothesis.  Presumably, NIST did not pursue a controlled demolition hypothesis during its WTC1 and WTC2 investigation because it maintained that it had found no corroborating

evidence of a blast or controlled demolition event.  However, NIST claims that it is considering whether hypothetical blast events could have played a role in initiating the destruction of WTC7.  This is suspect and demands correction.  In regard to the WTC7 investigation NIST maintains:

While NIST has found no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios that could have led to the structural failure of one or more critical elements as a result of blast.

In order to do that, NIST will have to revisit NCSTAR 1 and undertake an analysis of what happened during the 10-second destruction of the twin towers, something it did not previously do.  It cannot reasonably set up hypothetical blast scenarios that disregard what actually happened.

This, then, takes us into a second request for correction, as follows.


CORRECTION REQUEST ISSUE 2

The particular information disseminated that is the subject of this request consists in:

That certain information disseminated as solicitation number SB1341-06-Q-0186, which resulted in the issuance of a fixed price purchase order awarded by the federal government to Applied Research Associates, Inc. (ARA) of Albuquerque, New Mexico in or about March, 2006. (Information Item No. 2)

The source from which requester obtained the information is the NIST web site at the following page: http://wtc.nist.gov/solicitations/

Requester obtained the information from and after December 12, 2006 from the said web page.  It is understood and acknowledged that said information has been disseminated so as to comply with a requirement that contracts awarded to third party contractors may be known to the public and for other reasons, including, by way of example, the ability to request corrections.

Requester submits this request on behalf of himself and other similarly situated persons.  Requester is a citizen of the United States and maintains a web site for the accurate dissemination and propagation of governmental information.  Requester's business is in the nature of a research and journalistic organization that has succeeded in providing citizens of the United States with timely information concerning the function and the operation of various governmental agencies that are charged by their enabling legislation, rules and regulations of conducting certain duties in and for the public interest, of which and about which each citizen has a vital interest.

As indicated, this request is to be understood as being submitted by requester in his said capacity and either additionally or alternatively on behalf of other similarly situated persons who are too numerous to quantify or specifically name.  Requester is adversely affected by the ongoing threat of promulgation of information that is in need of correction because the present course of action may result in the

further concealment of serious wrongdoing.

Specifically, Information Item No. 2 fails to comply with applicable information quality guidelines and standards in a number of particular ways, including, but not limited to the fact that an inherent and definite conflict of interest arises as a result of the scope of work set out in Information Item No. 2.

The investigation of what caused the destruction of WTC7 has been compromised by the conclusions reached by NIST in its WTC1 and WTC2 investigation conclusions that indicated, as quoted above, and as summarized here, that evidence of controlled demolition could not be corroborated.

A controlled demolition conclusion at WTC7 would indeed challenge the integrity of the WTC1 / WTC2 collapse sequence report. The fact that many of the same scientists, experts, subcontractors, and associates responsible for the WTC1 / WTC2 conclusions are now working on the WTC7 investigation creates a conflict of interest concern because of inherent pressure to conform the outcome of the investigation of what caused the destruction of WTC 7 to that which they indicated caused the "initiation" of (but not actual destruction of) destruction of WTC 1,2...

In solicitation number SB1341-06-Q-0186 to Applied Research Associates, Inc. it states:

Research involving human subjects is not permitted under this award unless expressly authorized by in writing by the NIST Contracting Officer.

Under GSA Contract number GS23F0278M, NIST Order No. SB1341-06-8-0539, as a firm fixed price effort, has been awarded to APPLIED RESEARCH ASSOCIATES, INC. (ARA) of Albuquerque, New Mexico, to append the following tasks to the original contract awarded on March 31, 2006 (SB1341-06-Q-0186). Under the appended tasks, the ARA (1) shall conduct analyses of impact damage and fire effects to provide candidate initiating events, which may lead to structural failures and global collapse, and (2) shall determine if there is any scenario of a hypothetical blast event or events that could have occurred in WTC 7 on September 11, 2001.

This study will reportedly be managed from the Silicon Valley Office of ARA that specializes in finite element analysis and nonlinear structural dynamics under blast and impact loading, impact and penetration mechanics, failure analysis, and blast effects and the analysis of progressive collapse in buildings. ARA is partnering with Simpson Gumpertz & Heger Inc. (SGH) of Waltham, Massachusetts, to conduct the appended tasks, and with Loizeaux Group International (LGI), the consulting services branch of Controlled Demolition Incorporated (CDI) of Phoenix, Maryland.

SGH is an engineering firm that specializes in design, investigation and retrofit of buildings and structures of all types. SGH has expertise in building structures, materials, and investigations and conducted the thermal-structural response analyses of each WTC tower, as part of their contract for the WTC towers investigation.

Loizeaux Group International (LGI) has expertise in a wide range of demolition, explosion and explosives-associated technology. This includes explosive processes and their direct and collateral effects of blast and resulting vibration, projectiles, and overpressure. They have conducted investigations involving commercial explosives, terrorist devices, commercial gas, and industrial accidents involving dusts, hot metals, and combustion processes.

The fact that ARA, SGH, and LGI are prohibited from interviewing human subjects unless expressly authorized in writing by the NIST Contracting Officer calls into question the quality, utility, objectivity, integrity, and transparency of the hypothetical blast scenario research.  Indeed, much of the anecdotal information available to me confirms that there are both eyewitnesses to controlled demolition, consisting in people who have made public statements that they either heard and saw explosions and/or heard countdowns and then saw a destruction event that looked, well, controlled.  Furthermore, more recently, evidence of controlled demolition has been made public consisting in video footage indicating a major news source, the British Broadcasting Company (BBC), aired a claim that WTC7 ha d "collapsed" several minutes before it actually did.  Indeed, some video indicates a verbal claim of collapse with the building still standing in the background.

It has long been known that a key person, Larry Silverstein, a principal owner of property interests in the World Trade Center complex, indicated, in substance that a decision was made to "pull" – that is – demolish WTC 7.

That key investigators cannot interview such persons, without going through administrative hoops is absurd.  Moreover, in at least one of these instances, advance knowledge that WTC 7 was to be demolished might well lead to criminal charges.  NIST contractors such as ARA, SGH, and LGI are not qualified to conduct criminal investigations or criminal interviews or criminal interrogations.

Thus, not only is there an inherent conflict of interest in that some or all of these same parties were involved in the investigation of WTC1 and WTC2 that could not find "corroborating evidence" of controlled demolition, thus preordaining the same outcome for the WTC7 investigation, there is the possibility these contractors could taint a criminal investigation.

There is yet another problem.

Any evidence of a controlled demolition might, conceivably implicate one or more of the sub-contractors because some of them are entities that have expertise in controlled demolitions.  For example, let us consider Controlled Demolition Inc., or one or more of its employees, past and present, and its subcontractors.  The universe of individuals having the capability to carryout controlled demolition work is somewhat limited. Such skills are not generally found among the general population.

The range of people who could carryout such demolitions are necessarily limited.  Upon information and belief, CDI carries out more than 70% of

all controlled demolitions conducted in the US.

It stands to reason that past and present employees of CDI could be parties of interest to any criminal investigator investigating a controlled demolition event at WTC7 because these people clearly possess the technical expertise to "pull" any structure by controlled demolition.

I, as a requester, do not have to elaborate this issue overmuch.  The potential conflict is clear and apparent and cries out for correction.

To continue to allow a hypothetical blast event investigation within the WTC7 investigation, done by the current crop of subcontractors demonstrates a lack of quality, utility, objectivity, integrity, and transparency within the investigation that is clear, apparent and incontrovertible.

NIST, ARA, SGH, and LGI, the consulting branch of CDI, are not qualified to conduct a proper investigation of whether or not a controlled demolition of WTC7 occurred.  The fact that ARA, SGH, and LGI are prohibited from interviewing human subjects unless expressly authorized in writing by the NIST Contracting Officer calls into question the quality, utility, objectivity, integrity, and transparency of the hypothetical blast scenario research in its own right.  Moreover, even if they were allowed to do so, or granted permission to do so, another confounding variable exists because those parties should not be permitted to taint a possible criminal investigation.

ARA, SGH, and LGI are not qualified to conduct criminal investigations or criminal interviews or criminal interrogations. Controlled Demolition Inc., its employees past and present, and its subcontractors would be a parties of interest to any criminal investigator investigating a controlled demolition event at WTC7 because these people clearly possess the technical expertise to "pull" any structure by controlled demolition.  From a criminal investigation standpoint, CDI would have to be cleared of suspicion prior to being solicited to assist in the investigation.

NIST, ARA, SGH, and LGI must cease their hypothetical blast scenario investigation forthwith because continuing with it is hopelessly tainted, compromised and damaged, and NIST must acknowledge as much.

By copy of this Correction Request to my counsel, Jerry V. Leaphart of Jerry V. Leaphart and Associates, P.C., I hereby request that he file for an injunction preventing NIST from going forward with any further issuance of any report on what caused the 6.6 second destruction of WTC 7 pending the resolution of this Correction Request.

Respectfully submitted,


Edward F. Haas
Cc
Jerry V. Leaphart
8 West Street Suite 203
Danbury, CT 06810

# EXHIBIT B

Subj: Fwd: Request for Correction
Date: 03/02/2007 8:47:29 AM Eastern Standard Time
From: Jsleaphart
To: melissa.lieberman@nist.gov
CC: efhaas@comcast.net


Dear Deputy Chief Counsel Melissa Lieberman:

I write to provide you with an informational copy of REQUEST FOR
CORRECTION served upon NIST on 28 February, 2007 (RFC).  As noted
therein, the undersigned attorney represents Edward F. Haas.

As indicated more fully therein, the Requester, Edward F. Haas, asserts
that NIST should temporarily suspend further investigation of the causes
of the destruction in 6.6 seconds of WTC 7 pending the outcome of the
RFC because it raises issues that entail both information involving
issues of misrepresentation and of conflict of interest.

Prior to seeking legal redress to obtain an injunction, it is deemed
appropriate to request a voluntary, written agreement wherein NIST would
agree to cease and desist certain aspects of the WTC 7 investigation
pending the resolution of the RFC.

Accordingly, negotiations are hereby requested that would be for the
purpose of determining if an agreement can be reached on what aspects of
the ongoing WTC 7 investigation would be held in abeyance pending
resolution of the presently pending RFC.

Your timely reply to this request for negotiations would be appreciated.

Respectfully submitted,


Jerry V. Leaphart
counsel for Requester, Edward F. Haas

8 West Street
Suite 203
Danbury, CT 06810

p-203-825-6265
f-203-825-6256