**UNITED STATES DEPARTMENT OF COMMERCE**
**National Institute of Standards and Technology**
Gaithersburg, Maryland 20899-

August 22, 2007

Edward F. Haas
1214 Sam Snead Drive
Mt. Pleasant, SC 29466

Dear Mr. Haas:

This letter is in response to your letter pursuant to Section 515 of P.L. 106-544 (the Information Quality Act) that the National Institute of Standards and Technology (NIST) received on March 1, 2007. In your letter, you assert that information disseminated by NIST regarding the on-going investigation of World Trade Center 7 (WTC 7) is in danger of violating the data quality standards and you make two specific requests for correction to NIST documents.

Your letter presents two correction request issues as presented below:

**Correction Request Issue 1:**

Your letter asserts that the following statement found on page 11 of the document titled, "Federal Building and Fire Safety Investigation of the World Trade Center Disaster WTC 7 Technical Approach and Status Summary," available on the NIST WTC website at http://wtc.nist.gov/media/WTC7_Approach_Summary12Dec06.pdf, is demonstrably false and misleading:

"NIST is analyzing scenarios for the event that initiated the collapse of WTC 7. As a part of this work, NIST is considering whether hypothetical blast events could have played a role in initiating the collapse. While NIST has found no evidence of a blast or controlled demolition event, NIST will estimate the magnitude of a hypothetical blast scenarios that could have led to the structural failure of one or more critical elements as a result of blast."

Your letter further asserts that this is claim is supported by what you perceive as a change in NIST statements about not finding evidence of controlled demolition in the investigation of the WTC Towers and WTC7. Your letter specifically references the statement made on page xxxvii of NCSTAR 1:

"NIST found no corroborating evidence for alternative hypotheses suggesting that the WTC Towers were brought down by controlled demolition using explosives planted prior to September 11, 2001," and the statement made on page 11 of the "Federal Building and Fire Safety Investigation of the World Trade Center Disaster WTC 7 Technical Approach and Summary":



"While NIST has found no evidence of a blast or controlled demolition event..."

The first statement, which appears in NIST's final report on the collapse of the WTC Towers, should not be deemed to apply to WTC 7. That statement is based upon NIST's analysis of the totality of data on the WTC Towers available to the investigation team. NIST has analyzed much of the evidence of the events of September 11, 2001 that is purported by others to indicate deliberate demolition of the World Trade Center Towers. Yet, when this information is considered within the context of the totality of the evidence collected and analyzed by NIST, it is not possible to corroborate alternative hypotheses suggesting that the towers were brought down by controlled demolition.

Similarly for WTC 7, the totality of the evidence does not suggest a controlled demolition of the building. In the case of WTC 7, the progression of failure from the initiation along the east side of the building core is well understood, and NIST has reported on the collapse progression in the June 2004 Progress Report on the Federal Building and Fire Safety Investigation of the World Trade Center Disaster. What is not well understood is the initiating event that led to the collapse. NIST is studying fire scenarios and hypothetical blast scenarios may have initiated a failure along the east side of the core of WTC 7. To be considered by NIST and its contractors, the hypothetical blast scenarios being studied must conform to the observable evidence, such as a lack of broken windows in the area where the collapse initiated and a lack of witness accounts of audible blasts at the time the building collapse initiates. Further, the consideration of hypothetical blast scenarios does not presuppose that such an event was deliberate (e.g., controlled demolition). The collapse of WTC 7 in and of itself does not present evidence of a controlled demolition event. The consideration of hypothetical blast scenarios is intended to determine whether a blast of a magnitude sufficient to sever a column could have occurred within the parameters defined by the visual and eyewitness evidence available.

Your letter also asserts that NIST did not find evidence of controlled demolition in the collapses of the World Trade Center Towers because it did not look for it. As noted above, when the totality of the evidence of the collapses is considered, as was the case in NIST's investigation, it is clear that the collapses initiated at the floors of impact as described in NIST's final report.

NIST is denying your request to revisit NCSTAR 1 and undertake an analysis of what happened during the collapses of the WTC Towers. Given the totality of the evidence analyzed by NIST during its investigation, NIST's findings as to the causes of the collapses of the WTC Towers are supported by that evidence. Further, there is no conflict in NIST's statements regarding the lack of corroborating evidence for the use of explosives or controlled demolition in the case of the WTC Towers and the statement that NIST has found no evidence of a blast or controlled demolition event in the case of WTC 7. Therefore, NIST is denying your request for correction.

**Correction Request 2:**

Your second request for correction asserts that because NIST's contract to Applied Research Associates, Inc. (ARA) contains the clause, "Research involving human subjects is not permitted under this award unless expressly authorized in writing by the NIST Contracting Officer," calls into question the quality, utility, objectivity, integrity and transparency of the hypothetical blast scenario research. It should be understood that the contract issued to ARA, and supported by its subcontractors, Simpson, Gumpertz and Heger (SGH) and Loizeau Group International (LGI), is for performance of technical analysis of WTC 7 and to analyze the hypothetical blast scenarios. The statement of work for ARA and its subcontractors does not include conducting interviews of eyewitnesses, first responders, or others that may have information regarding WTC 7. NIST, as a part of its investigation, conducted interviews of survivors, first responders, and in addition reviewed 500 interviews conducted by the FDNY of its personnel. Your further assertion that Larry Silverstein indicated that a decision was made to demolish WTC 7 has been previously refuted by his spokesman on September 9, 2005 (refer to http://usinfo.state.gov/media/Archive/2005/Sep/16-241966.html).

The National Construction Safety Team (NCST) Act (P.L. 107-231) authorizes NIST to conduct technical investigations into the cause of building failures. NIST is not authorized under the NCST Act to conduct criminal investigations. Therefore, the assertion that ARA, SGH, and LGI are not qualified to conduct criminal investigations is irrelevant in the context of the work that they are being asked to perform under contract to NIST.

As stated in the response to Correction Request 1 above, the consideration of hypothetical blast scenarios does not presuppose a controlled demolition event. Further, as publicly stated, NIST has not found any evidence of a blast or controlled demolition event leading to the collapse of WTC 7. NIST is investigating whether a blast of a magnitude sufficient to sever a column along the east side of the core could have occurred within the parameters defined by the existing visual and eyewitness evidence. The fact that NIST did not find evidence of the use of explosives or controlled demolition in its investigation of the WTC Towers does not preordain the outcome of the WTC 7 investigation. NIST is relying solely on the evidence available for WTC 7 to conduct its analysis.

Your final assertion that past or present employees of Controlled Demolition Inc., of which LGI is the consulting branch, could be parties of interest to a criminal investigator investigating a controlled demolition of WTC 7 is without basis. As stated previously, the body of evidence collected on WTC 7 does not support a hypothesis of a controlled demolition. Thus, even though CDI and LGI possess technical expertise and experience in controlled demolition, this does not taint, compromise, or damage the NIST investigation as you suggest in your letter.

Based upon the above, NIST is denying your request to cease the consideration of hypothetical blast scenarios.

An appeal from an initial denial must be made within 30 calendar days of the date of the initial decision. Such appeal must be made in writing and addressed to:

>    Deputy Director
>    National Institute of Standards and Technology
>    100 Bureau Drive, Mail Stop 1000
>    Gaithersburg, MD 20899-1000

An appeal of an initial denial must include:

a. the requester's name, current home or business address, and telephone number or electronic mail address;
b. a copy of the original request and any correspondence regarding the initial denial; and
c. a statement of the reasons why the requester believes the initial denial was in error.

Thank you for your interest. If you have questions or concerns, you may contact me at info.quality@nist.gov. Please refer to http://www.nist.gov/director/quality_standards.htm for additional information.

Sincerely,

Catherine S. Fletcher
Chief, Management and Organization Division