Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDWARD F. HAAS, Individually, | : | |
| and on behalf of others | : | |
| similarly situated, | : | |
| Plaintiff, | : | ECF CASE |
| vs. | : | |
| | : | |
| CARLOS M. GUTIERREZ, | : | 07 CIV 3623 (GBD) |
| Secretary, U.S. Department | : | |
| of Commerce, et al | : | |
| Defendants. | : | |

# MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

December 18, 2007

Jerry V. Leaphart
Attorney for Plaintiff
On the Brief

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

**TABLE OF CONTENTS**

Overview………………………………………………………………… 5

Facts…………………………………………………………………... 6

Standard of Review…………………………………………………... 9

Argument……………………………………………………………...12

      Defendants' Motion to Dismiss Does Not
      Address Declaratory Judgment Claim………………..…………12

      A./B.   Standing and Reviewability of Claims under the IQA……..12

      C.       Mootness…………………………………………………17

      D.       Forbearance …………………………………………...17

      E.       Constitutional Relief……………………………………..18

      F.       Due Process Violation……………………………………20

      G.       Bivens……………………………………………………21

      H.       Conspiracy Theory………………………………………..21

## Table of Authorities

### Cases

Aetna Life Ins. Co. v. Haworth,
   300 U.S. 227, 239-40, 81 L. Ed. 617, 57 S. Ct. 461 (1937)) ......................... 8
Americans for Safe Access v. U.S. Dept of HHS et al.,
   2007 U.S. Dist. LEXIS 89257 ................................................................. 16
Bivens v. Six Unknown Agents,
   403 U.S. 388, 390-97 (1971) .................................................................... 4
BP Chemicals Ltd. v. Union Carbide Corp.,
   4 F.3d 975, 978 (Fed. Cir. 1993).............................................................. 9
Conley v. Gibson,
   355 U.S. 41, 46-47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)............................. 10
Conley v. Gibson,
   355 U.S. 41, 47 (1957)............................................................................. 18
Freiburger v. Emery Air Charter, Inc.,
   795 F. Supp. 253, 256 (N.D. Ill.1992) ...................................................... 9
Harlow v. Fitzgerald,
   457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)............................. 10
Jenkins v. McKeithen,
   395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969);
   Repub. Party, 980 F.2d at 952.................................................................. 10
Lujan v. Defenders of Wildlife,
   504 U.S. 555, 560-61 (1992) .................................................................... 12
Maryland Casualty Co. v. Pacific Coal & Oil Co.,
   312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941).............................. 9
Menominee Indian Tribe of Wisconsin v. Thompson,
   161 F.3d 449, 456 (7th Cir. 1998). ........................................................... 10
Repub. Party v. Martin,
   980 F.2d 943, 952 (4th Cir. 1992) ...................................................... 10, 16
Salt Inst. v. Leavitt,
   440 F.3d 156 (4th Cir. 2006). ................................................................. 14
Scheuer v. Rhodes,
   416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)......................... 10
Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d 938,
   942 (9th Cir. 1981)................................................................................... 9
United Transp. Union v. Gateway Western R. Co.,
   78 F.3d 1208 (7th Cir.1996) ..................................................................... 9

**Other Authorities**

28 U.S.C. § 2201(a) ............................................................................................ 9
Administrative Procedure Act,
    5 U.S.C. §551 et seq. and 5 U.S.C. §701 et seq. .................................................. 5
Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure,
    § 1356 (1990) ...................................................................................... 11, 17
Data Quality Act,
    Pub. L. No. 106-554 § 515 ............................................................................ 12
Declaratory Judgment Act,
    28 U.S.C. § 2201 et seq. ................................................................................ 9
Information Quality Act of 2000,
    codified at 44 USC § 3516 (the IQA). ................................................................ 8
Margaret Pak, <u>Note & Comment: An IQ Test For Federal Agencies?</u>
    <u>Judicial Review of the Information Quality Act under the APA,</u>
    80 Wash. L. Rev. 731 (2005). ......................................................................... 15

**Rules**

Fed. R. Civ. P. 15(a), .......................................................................................... 5
Fed. R. Civ. P. 12 (b) (6) ...................................................................................... 17
Fed. R. Civ. P. 8 (a) (2) ....................................................................................... 19
Fed. R. Evid. Rule 613 and Rule 801 ...................................................................... 14

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

### - OVERVIEW -

In response to defendants' motion to dismiss, the plaintiff first notes that he has set forth a viable cause of action under the Declaratory Judgment statute, Bivens v. Six Unknown Agents, 403 U.S. 388, 390-97 (1971) (Bivens), and under the Administrative Procedure Act, 5 U.S.C. §551 et seq. and 5 U.S.C. §701 et seq..   Subsequent to the filing of plaintiff's complaint, there have been additional developments that warrant the filing of a second amended complaint in order to have before the court an accurate and full picture of the status of the issues that are in dispute.  Accordingly, this memorandum in opposition will address both the current operative complaint, which is entitled First Amended Complaint filed on May 10, 2007 and will also address the Second Amended Complaint, filed simultaneously herein by way of Motion for Leave to file per F. R. Civ. P. 15(a), for which leave to file has been filed simultaneously with the filing of this memorandum in opposition to motion to dismiss and which Second Amended Complaint is annexed hereto for information purposes as Exhibit A.

In either event, and irrespective of which complaint version is to be deemed operative, it is clear that plaintiff can withstand the defendants' motion to dismiss based upon applying the standards that govern motions to dismiss arising, alternatively, under F.R.Civ.P. R 12(b)1 and/or 12(b)6.

- FACTS -

This is a case arising out of a challenge to the continuation by the National Institute of Standards and Technology, (NIST) acting by and through certain of its senior managers who are named as individual defendants in this matter[1], of a long delayed investigation of what caused the destruction of World Trade Center building number 7 (WTC7) on the afternoon of September 11, 2001.  That building was not damaged in any way by any jetliner impact, yet it seemingly self-destructed in a mere 6.6 seconds, falling into its own footprint with virtually no spillage outside of its own footprint, without so much as spilling any debris across the street from its location, leaving a debris pile as though it had been expertly and intentionally demolished (See Exhibit B).

To the date hereof, NIST has yet to issue an explanation of what caused that depicted and near instantaneous destruction of the 47-storey skyscraper that was WTC7 on the afternoon of September 11, 2001.  However, NIST has shown that it is unwilling to give proper credence to the evidence that the said skyscraper, WTC7, was destroyed by controlled demolition by virtue of certain published statements that NIST has repeatedly made to the effect that "it has found no evidence of controlled demolition."

The truthfulness of that statement has been specifically challenged by plaintiff in connection with a certain Request for Correction that he made on or about March 1, 2007, in which he asserted, among other things, that NIST was ignoring the existence of numerous statements that either acknowledged or admitted that WTC7 was destroyed by controlled demolition, including that of an owner of a significant interest in the building, Larry Silverstein, who was quoted as saying, in substance, that the building was "pulled" or brought down by way of controlled demolition.  Subsequent to the time Mr. Silverstein

---

[1] Corporate defendants have been dismissed out and are also not named in the Second Amended Complaint.

made this statement and the filing of this action, additional evidence has emerged to support plaintiff's assertion that the statement that "[NIST] has found no evidence of controlled demolition" is false. Namely, there is now a written admission by NIST that serves to confirm that NIST not only has Mr. Silverstein's statement as evidence of controlled demolition of WTC7 but has also misconstrued Mr. Silverstein's statement and sought to discount it as evidence of controlled demolition, but has done so on the plainly improper basis of allowing the statement to be deemed to be "refuted," not by the declarant himself, but by a "spokesman" for the declarant.

In so doing, NIST has not only shown that it is engaging in fraud and deceit, it is plainly misconstruing the legal effect of the statement it knows to have been made by Larry Silverstein and the purported refutation of it. At most, and for purposes of "evidence" it is clear that the original statement that WTC7 was "pulled" meaning it was intentionally destroyed by way of controlled demolition is not "refuted" in the sense of being made to disappear from existence as evidence by a subsequent attempt at refutation. At most, the subsequent attempt at refutation serves to turn the original statement into a "prior inconsistent statement" which, remains, of course, as a form of evidence to be resolved by an appropriate trier of fact.

On May 10, 2007, plaintiff, Edward F. Haas, (plaintiff) filed an amended complaint in this matter consisting in 35 pages of text in which he articulated a cause of action in which he sought a declaratory judgment under and pursuant to 28 U.S.C. § 2201 et seq.[2] The purpose of the complaint was to seek injunctive relief because as of that date, NIST had not responded to plaintiff's earlier filing of a Request for Correction, which he

---

[2] Defendants Memorandum in support of motion to dismiss fails to address the fact that plaintiff's complaint presents a claim for declaratory relief. On that basis, alone, it would appear defendants' motion to dismiss must be denied.

submitted on or about March 1, 2007.  In addition, plaintiff's May 10th complaint asserts applicability of Bivens by way of a claimed violation of his rights to due process arising under the 5th Amendment to the US Constitution and plaintiff asserts a cause of action for breach of what he then called the Data Quality Act, which will henceforth be referred to as the Information Quality Act of 2000, codified at 44 USC § 3516 (the IQA).

Subsequent to the filing of his First Amended Complaint on May 10, 2007, and as indicated by defendants via a Declaration of Deputy General Counsel Melissa J. Lieberman, dated October 25, 2007, and filed in support of defendants motion to dismiss, plaintiff's Request for Correction of March 1, 2007 (RFC 3/1/07), was responded to by NIST on or about August 22, 2007 (RFC Response 8/22/07).[3]  A copy of the said RFC 3/1/07 is annexed hereto as Exhibit C.  A copy of the said RFC Response 8/22/07 is annexed hereto as Exhibit D.

The RFC Response 8/22/07 states in relevant part as follows:

Your further assertion that Larry Silverstein indicated that a decision was made to demolish WTC 7 has been previously refuted by his spokesman on September 9, 2005….

In response to this statement, which can be found under the segment "Correction Request 2" on page 3 of Exhibit D, plaintiff asserts, in the affidavit annexed hereto as Exhibit E, that the quoted statement does not adequately counter the assertion that there is evidence of controlled demolition of WTC 7.  NIST makes the multiple assertions to this effect, contained in several of the publications of NIST, for which defendants are responsible, plainly false.   See Exhibit E.

---

[3]   There are two separate ways of considering the RFC Response 8/22/07 for purposes of the motion to dismiss:  a) As a part of defendants' submittal; and b) as a part of the Second Amended Complaint.

It is worth reiterating that to plaintiff's knowledge, there is only one source of the information that NIST considers the "pull it" statement of Larry Silverstein to have been refuted by the subsequent statement of a "spokesperson" and that source is, in fact, the RFC Response 8/22/07, making plaintiff, in point of fact, the only person who has standing to bring a cause of action seeking declaratory and injunctive relief and asserting due process violations and violations arising under the APA.  As noted the RFC Response 8/22/07 is annexed hereto as Exhibit D.

## - STANDARD OF REVIEW -

As indicated in footnote 2, the defendants' motion to dismiss does not address the fact that plaintiff's complaint invokes the Declaratory Judgment Act, 28  U.S.C. §  2201 et seq., and ought, therefore, to be denied on that basis alone.  The Declaratory Judgment Act provides that "in a case of actual controversy" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This "actual controversy" requirement "is the same as the 'case or controversy' requirement of Article III of the United States Constitution." Societe de Conditionnement en Aluminium v. Hunter Engineering Co., 655 F.2d 938, 942 (9th Cir. 1981) ("SCAL") (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 81 L. Ed. 617, 57 S. Ct. 461 (1937)). To satisfy the constitutional requirement the dispute at issue "must be definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co., 300 U.S. at 240-41. The opposite of such a dispute, which therefore fails to invoke federal court jurisdiction, is an advisory opinion based on "a hypothetical state of facts." Id. at 241. The difference between an actual controversy and one seeking an impermissible advisory

opinion "'is necessarily one of degree,' and is determined on the totality of the circumstances." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)).

By failing to recognize that plaintiff asserts a cause of action under the Declaratory Judgment Act, defendants have not stated why, under either Fed. R. Civ. P. Rule 12 (b) (1) or Rule 12 (b) (6) the plaintiff's complaint cannot be said to state a viable cause of action.

Further, although defendants' motion to dismiss purports to be based on both Fed. R. Civ. P. Rules 12 (b) (1) or 12 (b) (6), but does not state or differentiate where and how or in what manner either of those rules is to be construed for purposes of deciding whether their motion to dismiss has any merit. Moreover, plaintiff should not be required to guess or speculate where and how the one rule or the other should be deemed applicable to the claims raised by defendants. Accordingly, defendants' motion to dismiss is simply not well or properly grounded and ought, therefore, to be denied.

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the purpose of the motion. See Freiburger v. Emery Air Charter, Inc., 795 F. Supp. 253, 256 (N.D. Ill.1992). If the motion simply challenges the sufficiency of the allegations of subject matter jurisdiction, as defendants' appears to do here, the court must accept as true all well-plead factual allegations and draw all reasonable inferences in favor of the plaintiff. United Transp. Union v. Gateway Western R. Co., 78 F.3d 1208 (7th Cir.1996). In ruling on a motion to dismiss, the court may consider public documents, that, in this instance would seemingly include the RFC 3/1/07

and the RFC Response 8/22/07.  See: <u>Menominee Indian Tribe of Wisconsin v. Thompson,</u> 161 F.3d 449, 456 (7th Cir. 1998).

Plaintiff's complaint sets forth both jurisdictional and venue grounds that are accurate and, for that matter, unchallenged by defendants; and, accordingly, defendants' claim of entitlement to relief under Rule 12 (b) (1) is simply not supported.

Rule 12 (b) (6) allows a suit to be dismissed for failure to state a claim upon which relief may be granted. A Rule 12 (b) (6) motion to dismiss only determines whether a claim is stated; it does not resolve disputed facts, the merits of the claim, or applicability of defenses. <u>Repub. Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (1990)). A complaint should not be dismissed unless it clearly appears that the plaintiff can show no set of facts which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 46-47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  Indeed, a court should not dismiss a complaint that states a claim, even if it appears that the chance of recovery is remote. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), abrogated on other grounds by <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court should construe allegations in the complaint as true and taken in the light most favorable to the plaintiff<u>. Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); Repub. Party, 980 F.2d at 952.

Application of the stated standards of review clearly determine that the plaintiff's complaint is sufficient and that, accordingly, defendants must answer the complaint and

discovery must be allowed to take place, all as is more fully confirmed in the argument section next following.

-ARGUMENT –

As the argument portion of defendants' motion to dismiss is divided into six (6) subsections, with headers A through F, this memorandum will adopt a similar format, with the exception of first noting defendants' failure to address the dominant legal theory pursuant to which the complaint is brought.

### DEFENDANTS' MOTION TO DISMISS DOES NOT ADDRESS PLAINTIFF'S DECLARATORY JUDGMENT CLAIM

This issue has been largely addressed in the Standard of Review section where plaintiff has already noted that not one word is mentioned in defendants' "Memorandum in Support of Government Defendants' Motion to Dismiss" (defendants' Memorandum) submitted on or about 10/26/07 that addresses the fact that plaintiff's complaint arises under the Declaratory Judgment statute, 28 U.S.C. § 2201 et seq.  The prior argument on this point is deemed reiterated here.

### A.  and B.
### STANDING and REVIEWABILITY OF CLAIMS UNDER THE IQA

Defendants first argue that plaintiff lacks standing to bring this action, but does so without regard to plaintiff's first claim, all as discussed above.  The starting point for defendants' claim with respect to standing concerns application of the three requisites or elements for standing as defendants envision them applying to the Information Quality Act, aka Data Quality Act Pub. L. No. 106-554 § 515 (reprinted at 44 U.S.C. § 3516) (IQA).  These elements are: (a) an injury in fact; which is (b) concrete and particularized and (b) actual or imminent.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)

The IQA is a relatively recent enactment and, to plaintiff's knowledge, has not yet been definitively interpreted by this court or the Second Circuit.  It is true that in the limited jurisprudence thus far to have developed the majority of cases have tended to hold that there is no right of judicial review of determinations made under, or pursuant to the IQA.  Thus, it is important to note that plaintiff's complaint is being pursued not on the theory that the defendants improperly granted or denied his RFC 3/1/07, but that the NIST's intentional dissemination of contradictory information violates both the dictates of and the policy underlying the IQA.

Not one of the cases cited by defendants, and no case or legal commentary that plaintiff could locate, deal squarely with the issue presented by this case and/or the manner in which the IQA is applied to the facts and circumstances arising hereunder. Thus, this is factually a case of first impression as well as being a case of legal first impression in the Southern District of New York and the Second Circuit.

In this case we are dealing with the IQA in a specific context.  That context involves the fact that in a document addressed to the plaintiff and to no one else, the governmental defendants have plainly and openly admitted that their published claim that "it [NIST] has found no evidence of a blast or controlled demolition event" is objectively false and NIST knows as much.  The plaintiff, uniquely, is in a position to substantiate the assertion that the quoted claim is false because NIST in its letter to plaintiff dated August 22, 2007, designated here as RFC Response 8/22/07, and attached to this memorandum as Exhibit D, contains a specific written acknowledgment that confirms the falsity of NIST's elsewhere published claim alleging no evidence of a blast or controlled demolition event.

NIST has stated to plaintiff:

> **Your further assertion that Larry Silverstein indicated that a decision was made to demolish WTC 7 has been previously refuted by his spokesman on September9, 2005(refer to http://usinfo.state.gov/media/Archive/2005/Sep/16-241966.html).**

The quoted statement is noteworthy for the questions of fact and of law that it presents. First of all, a "spokesman" arguably cannot refute a declarant who has made a declaration against interest, an admission or, for that matter, any other statement. See Fed. R. Evid. Rule 613 and Rule 801. Secondly, and more importantly, this is a motion to dismiss. Yet, at the outset we are dealing with issues of fact and of interpretation. Thus, this case cannot succumb to a motion to dismiss with a factual issue like this remaining not only unresolved but also needing to be viewed in the light most favorable to the non-moving party.

Further, the web page to which reference is made in the above quote (from Exhibit D – RFC Response 8/22/07) merits inclusion herein as Exhibit F. As the Exhibit shows, the web page raises more questions than it answers. What the reference does is to use the very statements of NIST, which the plaintiff had sought to correct to for purposes of confirming that the challenged information must be true because it exists in more than one place. Stated another way: NIST engages in circular logic by relying on a statement of refutation that itself relied on the "no evidence of demolition" statement which plaintiff initially requested be corrected. Plainly, then, not only is there evidence of controlled demolition, there is, now that we are delving into the facts, evidence that NIST is overtly seeking to squelch evidence of controlled demolition, which is worse than what was envisioned in the first place. Further, only plaintiff know this and he knows this only by virtue of having filed his RFC 3/1/07 in the first place.

These circumstances clearly distinguish plaintiff's use of the IQA from anything that has been previously addressed in any case cited by defendants, including, by way of example, that of the 4th Circuit entitled <u>Salt Inst. v. Leavitt</u>, 440 F.3d 156 (4th Cir. 2006). In addition, plaintiff can refer the court to a relatively recent law review article[4] that was published just prior to the issuance of the 4th circuit's decision in <u>Salt Inst. v. Leavitt</u>, supra, in which it was noted that as of that time, there were but two district court cases on the issue of judicial review of cases arising under the IQA, of which <u>Salt Inst.</u> was one.

In both <u>Salt Inst. v. Leavitt</u>, supra, and in the discussion in the cited law review article, the issue dealt with centered on whether the Administrative Procedure Act allowed judicial review of an agency's decision to grant or deny an RFC.

> Judicial review of an agency's decision to grant or deny an RFC under the APA is barred because such review falls within both section 701(a) exceptions to APA review. Under section 701(a)(1), congressional intent to preclude judicial review of the IQA is "fairly discernible" through the structure, objectives, and nature of administrative action involved in the statutory scheme. Under section 701(a)(2), judicial review of the IQA is not available because the IQA and its pursuant guidelines do not provide any law to apply, nor do they provide any meaningful standards by which to judge agency action.

Margaret Pak,  <u>Note & Comment: An IQ Test For Federal  Agencies? Judicial Review of the Information Quality Act under the APA</u>, 80 Wash. L. Rev. 731 (2005). There is a world of difference between, on the one hand, judicial review of an agency's decision to grant or deny an RFC, and, on the other hand, an agency's statements contained in different agency disseminated documents as "truth" being judicially challenged as evidence that said agency is knowingly violating the IQA.

---

[4] Margaret Pak,  Note & Comment: An IQ Test For Federal  Agencies? Judicial Review of the Information Quality Act under the APA,   80 Wash. L. Rev. 731 (2005)

What is at stake here is the right of plaintiff or any other member of the public to assert that an agency is failing to comply with the IQA by knowingly and deliberately disseminating contradictory information. The <u>Salt Inst.</u> case has nothing whatsoever to do with this issue and is, therefore, utterly inapplicable as precedent here.

The most recent case that plaintiff could locate concerning the IQA is one entitled <u>Americans for Safe Access v. U.S. Dept of HHS et al.</u>, 2007 U.S. Dist. LEXIS 89257 (copy annexed as Exhibit G) in which, yet again, the issue was an attempt to question the validity of an RFC Response, rather than, as here, the issue of seeking judicial intervention in NIST's knowing failure to adhere to the policy articulated in and reflected by the IQA. In other words, plaintiff seeks to require NIST to cease and desist from promulgation of falsity where the RFC Response 8/22/07 provides confirming evidence that NIST is doing just that.

Returning the three elements of standing, plaintiff has alleged:

(a) an injury in fact -- the promulgation by a federal agency of knowingly contradictory and thus in some part false information in violation of the IQA;

(b) said injury is concrete and particularized – the plaintiff has requested and been denied information to sort out the contradictions and eliminate obvious falsity;

(c) said injury is actual or imminent in that the only relief that can be granted is the clarification of existing contradiction to revealing quality (i.e. "true") information and NIST not only has not, but has demonstrated that it will not do so.

Clearly then, plaintiff is not seeking review of an IQA decision and the holding in <u>Salt Institute</u> that there is no standing to seek judicial review of an IQA decision is

inapposite. Rather, the IQA decision, like the statements which caused plaintiff to submit his RFC 3/1/07 in the first place, is merely evidence relied on to prove claims that ought to: a) give rise to a declaration of rights; and b) constitute a valid <u>Bivens</u> claim; and c) likewise comprise a valid claim under the APA. There are no cases on point in that respect and, indeed, this may well be a case of first impression arising under the IQA.[5]

## C.
## MOOTNESS

As stated in the preceding section, this is not a case where the issue in dispute is whether an RFC was responded to appropriately. That was merely one aspect of the case that existed at the time of filing. Accordingly, this issue requires no further commentary.

## D.
## FORBEARANCE

Defendants clearly stake their claim of entitlement to dismissal of the forbearance aspect of plaintiff's claim for relief as arising under Fed. R. Civ. Pro. 12 (b) (6). Accordingly, the standard applicable to that aspect of defendants' motion is expressed as follows:   A Rule 12 (b) (6) motion to dismiss only determines whether a claim is stated; it does not resolve disputed facts, the merits of the claim, or applicability of defenses. <u>Repub. Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (1990). Defendants do not support their assertions with any reference to any authority, statute or commentary.

As defendants mischaracterize plaintiff's claim as being a request for an order of "forbearance" pending a response to his RFC 3/1/07, it is not surprising that they argue simply that there is no requirement that an agency "forbear" from further action when an

---

[5] For that reason, defendants assertions that plaintiff's claims are frivolous, in addition to being unfounded, are inappropriate to have been raised in the first place.

RFC has been filed until it is responded to.  By refocusing on plaintiff's actual claim, the

court can see that there is no reason to dismiss the plaintiff's claim that the relief granted

in this case should include an order of forbearance until valid (i.e. quality) information

has been disseminated in place of the currently contradictory information available to the

public.

Plaintiff's claim here is that the defendants have knowingly disseminated

contradictory information, such that it is impossible to conclude that all of the

information it has disseminated in true.  Thus, rather than plaintiff requesting an

injunction on further dissemination until a requested correction is made, plaintiff is

seeking an order that defendants be instructed not to release further information on the

subject of the contradictory information until the existing contradictions are resolved.

Just as the question of whether plaintiff has standing and this court has jurisdiction over a

claim that an agency is in violation of the <u>substance</u> (as opposed to the procedure) of the

IQA is one of first impression, so too is the question of whether the forbearance sought

by plaintiff is appropriate relief.  The pending motion to dismiss should be denied, in

order that the court can resolve this missed question of law and fact on a properly

developed record.

### E.
### CONSTITUTIONAL RELIEF

The standard applicable to the present motion to dismiss is merely that of

determining whether a claim has been stated.  It is not necessary that plaintiff plead each

and every element of Biven's action, only that the complaint shall contain . . . a short and

plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 (a) of

the Federal Rules of Civil Procedure.  See also, <u>Conley v. Gibson</u>, 355 U.S. 41, 47

(1957). One of the seminal cases on the pleading standards in federal court notes that Fed. R. Civ. Pro. 8 (a) (2) only requires a statement in the complaint which "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.") Rule 8 (a) of the Federal Rules of Civil Procedure establish what has been described as a standard of "notice pleading." (Internal citations omitted.) Conley v. Gibson, *supra*, at p. 47. Plaintiff does far more than the federal notice pleading standard, as has been demonstrated in earlier subsections of this argument.

Turning specifically to defendants' attack to plaintiff's constitutional/Biven's claim, defendants have once again advanced an argument centering on the mooted issue of when the RFC Response 8/22/07 was issued. For example, defendants' contentions that "the IQA creates no substantive rights at all for plaintiff" (found at p. 7 of their memorandum) and "courts have held that Congress did not intend to create a judicial remedy for alleged violations of the IQA" (found at p. 8 of their memorandum) are based exclusively on case law that concerns a right to have a specific Request for Correction granted or denied, it does not speak to the issue in this lawsuit, which is whether or not the IQA provides plaintiffs, and all others similarly situated, with a right to have government agencies not knowingly disseminate false information as evinced by knowingly issuing contradictory information.

Once the plaintiff's complaint is properly understood, it becomes apparent that it is not vulnerable to a motion to dismiss. Plaintiff's constitutionally cognizable due process interest is in receiving "quality" information from the government, which is a

substantive right protected by the IQA.  By identifying each defendant individually and describing his or her role in the deprivation of plaintiff's right to receive quality information, the plaintiff has provided enough information under our notice pleading standards to fairly inform each defendant of the nature of his claim against him or her. Thus, there is no basis to find this aspect of plaintiff's complaint susceptible to dismissal pursuant to Rule 12 (b) (6).

## F.
## DUE PROCESS VIOLATION

In seeming recognition of the inappropriateness of section E., defendants next articulate a defense to the due process claims that plaintiff raises, but defendants do so solely on the basis of an artificial narrowing of what Bivens relief can entail.

The issue is not what substantive legal rights the IQA entails.  Rather, the issue here is that a response arising under the IQA and addressed specifically and exclusively to plaintiff, the RFC Response 8/22/07 – Exhibit C – is, indeed an interest that can and does rise to constitutional dimension precisely because but for his inquiry, the admission that it contains might not otherwise exist.  And the admission is one of legal significance. Indeed, one can envision that if another person or party were to seek to use the RFC Response 8/22/07 in furtherance of similar claims, defendants would then seek to defend by stating the said RFC Response 8/22/07 was addressed to someone else and only that person has standing to sue thereunder.

However, in this instance, the addressee is, indeed, seeking relief thereunder. And, it follows that he should be entitled to do so; especially as to the standard applicable to a motion to dismiss.

## G.
## BIVENS

The analysis offered by defendants centering on the issue of "congressional inaction not having been inadvertent" cannot readily come within the standard applicable to a motion to dismiss. There is no reason to accept defendants' contentions concerning the nature of plaintiff's claims; and, in any event, defendants do not even say what they base their analysis concerning "congressional inaction" on. It has already been shown that plaintiff is decidedly not using or limiting his reliance on the IQA to the mere issue of whether or not NIST responded to his RFC. That is not the issue. So, accordingly, defendants, motion to dismiss is simply not well grounded.

## H.
## CONSPIRACY THEORY

Plaintiff is not certain what motivates defendants to engage in what appears to be dicta, pure and simple, in the last segment of their memorandum. There are, indeed, other cases pending that go to the issues of what happened to the World Trade Center Twin Towers; however, the issues here presented concern the information that plaintiff has caused to be unearthed concerning the evidence, repeat, evidence, of controlled demolition of WTC 7.

It would appear from the content of defendant's memorandum, that they prefer the official governmental conspiracy theory that holds that 19 Arabs, armed to the gills with box cutters, and trained to fly Piper Cub, single engine aircraft, succeeded in hijacking 4 wide body jetliners, and then flying and navigating them from well beyond the horizon, at or near their maximum attainable speed, not just in true and correct navigational path from beyond the horizon to New York City and elsewhere, but into the

World Trade Center.  Fine, if that is the conspiracy theory that defendants prefer to hype, they may do so.

They may not, however, refer to the questioning of that conspiracy theory as being frivolous.  Moreover, any attempt to do so has nothing whatever to do with the substance of either plaintiff's case and does not, therefore, constitute, a basis for granting a motion to dismiss.  For that reason, plaintiff chooses not to elaborate further on defendants' dicta.

THE PLAINTIFF


By_____
Jerry V. Leaphart JL4468
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
(203) 825-6256 - fax
jsleaphart@cs.com

Dated:  Danbury, CT
        December 18, 2007

## **ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2007, a copy of the foregoing Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

    /s/ Jerry V. Leaphart_____
Jerry V. Leaphart (JL4468)
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
Tel. (203) 825-6265
Fax (203) 825-6256