Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

EDWARD F. HAAS, Individually,           :
and on behalf of others                 :
similarly situated,                     :
                Plaintiff,     :     <u>ECF CASE</u>
vs.                                     :
                                :
CARLOS M. GUTIERREZ,                     :     07 CIV 3623 (GBD)
 Secretary, U.S. Department             :
 of Commerce, et al                    :
                Defendants.     :

# PLAINTIFF'S REQUEST FOR LEAVE TO FILE
# <u>SECOND AMENDED COMPLAINT</u>

Plaintiff, Edward F. Haas, by his attorney, Jerry V. Leaphart of Jerry V. Leaphart

and Assoc., PC, hereby respectfully requests this Court for leave to file a second

amended complaint under F. R. Civ. P. 15(a) which states:

> "…[A] party may amend the party's pleading only by leave of court or by written
> consent of the adverse party; and leave shall be freely given when justice so
> requires."

Attached hereto as Exhibit A is a copy of plaintiff's proposed Second

Amended Complaint.

Plaintiff respectfully requests that he be given leave to file his second

amended complaint in accordance with F. R. Civ. P. 15(a).

THE PLAINTIFF

By /s/Jerry V. Leaphart_____
Jerry V. Leaphart #JL4468
Jerry V. Leaphart & ASSOC.,PC
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265
(203) 825-6256 – fax
jsleaphart@cs.com


Dated:   Danbury, CT
         December 18, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007, a copy of the foregoing  Plaintiff's

Request for Leave to File Second Amended Complaint was filed electronically and

served by mail on anyone unable to accept electronic filing.  Notice of this filing will be

sent by email to all parties by operation of the Court's electronic filing system or by mail

to anyone unable to accept electronic filing as indicated on the Notice of Electronic

Filing.  Parties may access this filing through the Court's CM/ECF System.


    /s/ Jerry V. Leaphart
Jerry V. Leaphart #JL4468
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
Tel. (203) 825-6265
Fax (203) 825-6256

## **SCHEDULE A**

Jerry V. Leaphart #JL4468
Jerry V. Leaphart & Assoc., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 – phone
(203) 825-6256 – fax
jsleaphart@cs.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDWARD F. HAAS, Individually, | : | ECF CASE |
| and on behalf of others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiff, | : | DOCKET No. 07 CIV 3623 (GBD) |
| | : | |
| vs. | : | |
| | : | |
| CARLOS M. GUTIERREZ, | : | **SECOND AMENDED COMPLAINT** |
| Secretary, U.S. Department | : | **INJUNCTIVE AND** |
| of Commerce; | : | **DECLARATORY RELIEF,** |
| WILLIAM A. JEFFREY, Director, | : | **ATTORNEY'S FEES, COSTS OF SUIT** |
| National Institute of Standards | : | **PER** |
| and Technology (NIST); | : | **BIVENS v. SIX UNKNOWN AGENTS,** |
| DR. SHYAM SUNDER, Lead | : | **403 U.S. 388, 390-97 (1971)** |
| Investigator of NIST, WTC | : | **AND** |
| Investigation; | : | **ADMINISTRATIVE PROCEDURE ACT,** |
| DR. THERESA McALLISTER, | : | **5 U.S.C. § 551 et seq. and** |
| Research Structural | : | **5 U.S.C. § 701 et seq.** |
| Engineer, NIST; | : | |
| CATHERINE FLETCHER, Chief, | : | |
| Management and Organizational | : | |
| Division, National Institute | : | December 18, 2007 |
| of Standards and Technology | : | |
| (NIST); | : | |
| | : | |
| Defendants. | : | |

I.

<u>Nature of Action</u>

1.       This action is brought pursuant to (a) <u>Bivens v. Six Unknown Agents</u>, 403

U.S. 388, 390-97 (1971) (<u>Bivens</u>), for (i) violations and thre0atened violations of the

plaintiff's rights to Due Process under the Fifth Amendment to the United States

Constitution; and (ii) violations and threatened violations of the plaintiff's rights pursuant

to the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA"); and (iii) in

furtherance of plaintiff's rights to seek administrative review, including that of injunctive

relief and/or a delay in conducting further challenged administrative agency action as per

5 U.S.C. § 701 et seq.

2.       Plaintiff has submitted a Request for Correction (RFC) under and pursuant

to the Data Quality Act (DQA), per Section 515 of Public Law 106-554, which said RFC

has been pending within that certain department of the United States Department of

Commerce known as the National Institute for Standards and Technology (NIST), from

on or about February 28, 2007 through and including the present a period of time that

exceeds sixty (60) days.  However, on or about  August 8, 2007, NIST issued its response

to plaintiff's said RFC that contained admissions of controlled demolition of WTC7 by

way of the statement of Larry Silverstein, but NIST has knowingly misconstrued that

statement and sought to discount it as evidence of controlled demolition, but has done so

on the plainly improper basis of allowing the statement to be deemed to be "refuted", not

by the declarant himself, but by a "spokesman" for the declarant.  In so doing, NIST has

not only shown that it is engaging in fraud and deceit, it is plainly misconstruing the legal

effect of the statement it knows to have been made by Larry Silverstein and the purported

refutation of it.  At most, and for purposes of "evidence" it is clear that the original

statement that WTC7 was "pulled" meaning it was intentionally destroyed by way of

controlled demolition is not "refuted" in the sense of being made to disappear from

existence as evidenced by a subsequent attempt at refutation.  At most, the subsequent

attempt at refutation serves to turn the original statement into a "prior inconsistent

statement" which, remains, of course, as a form of evidence to be resolved by an

appropriate trier of fact.

     Thus, the factual basis clearly exists for plaintiff's valid assertion of a multi-

pronged cause of action.

     3.    Per the published Rules and Regulations found at

http://www.nist.gov/director/quality_standards.htm, plaintiff should have been informed
as follows:

> "3.    The division Chief will communicate his/her initial decision or the status
> of the request through the NIST OU Deputy Director to the Chief, NIST
> Management and Organization Division, who will communicate the initial
> decision to the requester, usually with 60 calendar days of NIST's receipt of the
> request.
>
> 4. The initial decision or status update will contain the name and title of the
> Division Chief and a notice that the requester may appeal an initial denial to the
> NIST Deputy Director (with the name, title, and address of that official), pursuant
> to paragraph III.D.1. below, within 30 calendar days of the date of the initial
> denial." (Excerpted from National Institute of Standards and Technology
> Guidelines, Information Quality Standards, and Administrative Mechanism)

     4.    NIST has published information indicating it is working on finalizing a

report on what caused the 6.6 second collapse of World Trade Center building number 7

(WTC7), which building was seen in video to have been destroyed, from tippity top to

utter bottom, via live video taped television programming, in the said 6.6 second time

interval occurring at approximately 5:20 PM on September 11, 2001.  As of that date and

time, WTC7 joined the 110-story World Trade Center Twin Towers, that had been known as World Trade Center building 1 (WTC1) and World Trade Center building 2 (WTC2), respectively, for address purposes, as the only three steel-reinforced skyscrapers ever to have self-destructed, from top to bottom, in a matter of mere seconds; except, that is, such structures as had been intentionally demolished by way of controlled demolition procedures and/or destruction resulting from warfare or military means.  Moreover, even as to such structures, the previous world's record height for even the controlled demolition of a building was only 439 feet, the height of the 25-story J. L. Hudson department store building in Detroit, MI.  See:  http://www.infoplease.com/askeds/tallest-building-demolished.html

> "According to the Guinness Book of World Records, the tallest building
> demolished by explosives was the former J. L. Hudson Department Store in
> Detroit, MI.  It stood at 439 feet when it was imploded on October 24, 1998."

Note, too, that controlled demolitions are not foregone conclusions and they are not easy to accomplish.  The higher the building is, the more likely it is that something will go awry.  With respect to the J. L. Hudson building, we are told:

> "Complicating the implosion, engineered by Controlled Demolition Inc. (CDI) of
> Phoenix, MD, was the fact that construction of the building occurred in 12 stages
> between 1911-46 and no structural drawings of the building existed.
>
> But the record-setting implosion went off without a hitch.  The roughly 2,728 lbs.
> of explosives placed inside the building reduced it to piles of debris in a matter of
> seconds."

Thus the implications here are clear:  On 9/11/01 not one, not two, but three, modern, steel-reinforced skyscrapers fell into their own foot-prints in nearly perfect, controlled demolition-like fashion.  Each one far exceeded the previous world-record heights for a controlled demolition…

The focus herein is WTC7.  The observed demolition of that building demonstrated a near text-book quality demolition as per what the naked eye could see.  Yet, after all this time, NIST has neither issued a report nor even responded to plaintiff's RFC.  The elements of deprivation of right are clear and apparent, justifying the injunctive relief here sought.  For the record, WTC7 stood 570 feet in height and was 47 stories.  It was, then, significantly taller, with nearly double the number of floors in comparison with Hudson's.

     5.     It was not until in or about the month of September, 2005, that NIST issued a final report on what it alleged caused the "initiation" of what it called the "collapse" of WTC1,2.  NIST's said report is commonly known as and referred to as NCSTAR 1 and can be accessed at: http://wtc.nist.gov/reports_october05.htm.

     6.     To this day, NIST has not yet issued any report on what caused the 6.6 second destruction of WTC7, but has issued certain interim public statements confirming that it is in the process of working on issuing a report on what caused the destruction of WTC7.  As of this date, December 18, 2007, NIST has indicated, in words or substance, that it still is not in a position to issue a report on what caused the destruction of WTC7.

     7.     In or about the month of October, 2006, approximately (6) months ago, NIST, for the first time, issued a publicized report that it is to consider "hypothetical blast events" as a possible causal factor in the destruction of WTC7.  Said publicly disseminated information can be found at

http://wtc.nist.gov/media/WTC7_Approach_Summary12Dec06.pdf

     8.     The summary found at the link listed above in paragraph 7. states at pg. 11 thereof a materially false statement to wit:  "While NIST has found no evidence of a blast

or controlled demolition event, NIST will estimate the magnitude of hypothetical blast scenarios…".  That statement is materially false because it stands in clear, palpable, direct and blatant contradiction of the statement acknowledging and admitting that WTC7 was felled by controlled demolition which statement was made by Larry Silverstein, a principal of defendant Silverstein Properties, in a publicly disseminated video statement airing on the US Public Broadcasting System, in which Larry Silverstein stated, and we quote him verbatim:

> "I remember getting a call from the er, fire department commander, telling me that they were not sure they were gonna be able to contain the fire, and I said, 'We've had such terrible loss of life, maybe the smartest thing to do is pull it.' And they made that decision to pull and we watched the building collapse."

As Silverstein Properties is or was a consultant for NIST under and pursuant to the preparation of NCSTAR 1, it is utterly incongruent, inconsistent and incomplete for NIST to declare it has no evidence of controlled demolition when, in fact, it has actively consulted with a party who has admitted just that.  In addition, said admission, and NIST's misleading and fraudulent declaration that it has no evidence of controlled demolition, confirms the existence of a clear and palpable conflict of interest mandating the injunction here sought.

9.      Plaintiff's RFC goes to the essence of the defendant, NIST's improper lack of treatment of the issue of controlled demolition with respect to WTC7.

10.     Based on the amount of time that has already elapsed since the 6.6 second top to bottom destruction of WTC7 on the afternoon of September 11, 2001, it is acknowledged that it is in the public interest to have a report on that event issued. However, the same could be said for anytime after, roughly, 90 days from the event itself in that one can safely assert that 90 days should have been a reasonable time to issue an

official report on an event that is both as important and as anomalous as is the complete and utter destruction of a skyscraper in a matter of seconds where such skyscraper had not been hit by either an acknowledged bomb or by an apparent jetliner or by anything else. Yet it fell right straight down, looking for all the world to see, like a controlled demolition. It should not take any competent group of investigators six (6) years to determine the destruction of WTC7 was a controlled demolition. Yet, despite the interest and the urgency in needing to know how on earth such an event could have happened, promptly, we are now nearly six (6) years' time from the event and it is only with the last one-hundred-twenty (120) days, or so, that NIST has even acknowledged it might need to look into "hypothetical blast events". Based upon the confirmed and verifiable facts here asserted, a delay in the further processing, by NIST, of analytical work pending resolution of plaintiff's RFC is plainly meritorious and just. Plaintiff's RFC alleges the existence of conflicts of interest and other elements found that may be dispositive of a) why it has taken so long; b) why the obvious evidence of controlled demolition has been: i) hidden; ii) ignored; and iii) downplayed.

11.     Annexed hereto as Exhibit A is a copy of plaintiff's RFC, appended to a request for negotiations addressed to NIST's Deputy Chief Counsel for Technology, Attorney Melissa Lieberman, that sought negotiations for forbearance of further work done on analyzing what caused the 6.6 second destruction of WTC7 pending outcome of plaintiff's RFC.

12.     Annexed hereto as Exhibit B is a copy of NIST response to plaintiff dated August 22, 2007 (NIST RFC Response).

13.    In any event, and as indicated, Deputy Chief Counsel Lieberman has not responded to the request for negotiations heretofore submitted with respect to forbearance on further assessment by NIST of what caused the near instantaneous destruction of WTC7.

14.    Based upon all of the foregoing, plaintiff herein asserts that:

15.    The Fifth Amendment's Due Process clause requires notice and the opportunity to be heard before NIST can continue to proceed on its investigation of what caused the near-instantaneous destruction of WTC7 because of NIST's attempt to improperly exclude evidence of controlled demolition that it obviously had and that it has admitted to have in the RFC  Response to plaintiff (Exhibit B).

16.    The NIST RFCX is in violation of the APA's procedural requirements, and is arbitrary, capricious, and unreasonable in the circumstances here presented and is an abuse of discretion and otherwise not in accordance with law.

17.    In the DQA (also known as the IQA), Congress established a federal scheme that
regulates the requirements and standards that information promulgated by agencies of the government of the United States, "Federal Agencies" must adhere to in order to assure that such information comports with quality standards.  When such information is deemed as "influential information" the requirements for meeting quality standards are higher than they otherwise would be.  It is here asserted that the information that is to result from the analysis of what caused the near-instantaneous destruction of WTC7 will be deemed, under the DQA, to be "influential information."  Thus, plaintiff's RFC that alleges certain well-documented particulars as to how and why the information thus far

released with respect to the investigation of WTC is internally inconsistent and fraught with obvious indicators of unlawful conflict of interest, all as more fully elaborated in Exhibit A, clearly mandates the relief to be requested herein.

18.    The claims in this complaint are cognizable under <u>Bivens</u> and the APA. Indeed, the refutation of evidence that NIST sought to rely on is deceptive.  The NIST RFC Response states in relevant part as follows:

> "Your further assertion that Larry Silverstein indicated that a decision was made to demolish WTC 7 has been previously refuted by his spokesman on September 9, 2005…"

In response to the quoted statement found under the segment "Correction Request 2" of Exhibit C, (pg. 3 of 4), plaintiff asserts that the quoted statement cannot serve to counter the assertion that there is evidence of controlled demolition of WTC 7, making the contrary assertions contained in several of the publications of NIST, for which defendants are responsible, plainly false.

It is worth reiterating that to plaintiff's knowledge, there is only one source of the information that NIST considers the "pull it" statement of Larry Silverstein to have been refuted by the subsequent statement of a "spokesperson" and that source is, in fact, the NIST RFC Response (Exhibit B), making plaintiff, in point of fact, the only person who has standing to bring a cause of action seeking declaratory and injunctive relief and asserting due process violations and violations arising under the APA.  As noted the NIST RFC Response is annexed hereto as Exhibit B.

Annexed hereto as Exhibit C is the source information confirming deception and the manifested intent to exclude evidence of controlled demolition of WTC 7.

II.

Parties

19.    Plaintiff, Edward F. Haas, ["EFHaas"] is a United States citizen and a resident of the State of South Carolina.

20.    Defendant Carlos M. Gutierrez is the Secretary of Commerce of the United States. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

21.    Defendant William A. Jeffrey is the Director of the National Institute of Standards and Technology (as aforesaid, "NIST"). In that role, he is responsible for exercising the authority delegated by the Secretary of Commerce to enforce the DQA. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

22.    Defendant Dr. Shyam Sunder is the Lead Investigator of the team designated to and charged with determining what caused the near-instantaneous destruction of WTC7.  As such, he is charged with conducting, and is authorized to direct the processes and procedures for and on behalf of NIST is furtherance of the WTC7 investigation. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

23.    Defendant Dr. Theresa McAllister is employed by NIST   as a Research Structural Engineer and who is known to have responsibilities directly related to performance of work and tasks in furtherance of NIST's attempt to determine what caused the near-instantaneous destruction of WTC7, such as the first-time announcement made in or about the month of October 2006, that NIST would then investigate the possibility of "hypothetical blast events" as being causal of the near-instantaneous

destruction of WTC7. Accordingly, Dr. McAllister appears to have significant responsibility for overseeing the work done in furtherance of the WTC7 investigation. She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

24.    Defendant Catherine Fletcher is the Chief, Management and Organization Division of NIST charged with the acknowledgment of RFCs to the sender of said RFCs. She is sued here in her individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

25.    The defendants are acting, and each of them at all times relevant hereto were acting, in their respective official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of federal law. Upon information and belief, unless preliminarily and permanently enjoined, the defendants, and each of them, intend to act in their

respective official capacities and under the authority of federal law in carrying out the ongoing investigation of the destruction of WTC7, in violation of the plaintiff's constitutional and statutory rights.

III.

Jurisdiction and Venue

26.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States; Bivens, 403 U.S. at 390-97, in that it seeks to secure prospective, equitable relief directly under the Constitution, specifically the Fifth Amendment; under 28 U.S.C. § 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, in that

one purpose of this action is to secure preliminary and permanent injunctive relief. Judicial review of the agency action at issue is authorized by the APA, 5 U.S.C. §§ 702, 704 and 706.

27.     This Court has venue under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims made herein – i.e., the location of the building destroyed on September 11, 2001, namely, WTC7, took place in this District. Alternatively, this Court has venue under 28 U.S.C. § 1391(b)(3) because at least one of the defendants maintains an office in New York City.

IV.

Facts

28.     The plaintiff incorporates by reference all facts and allegations contained in paragraphs 1 through 31.

29.     The plaintiff filed an RFC under the DQA on or about February 28, 2007. To date, there has been no reply or other acknowledgment by defendants or anyone acting on their behalf of receipt of plaintiff's said RFC.

30.     The defendants likewise rejected, by non-responsiveness, plaintiff's request for negotiations for forbearance that plaintiff had submitted on or about March 2, 2007, as per Exhibit B.

31.     On information and belief, the defendants and/or their agents may wish to continue disregarding plaintiff's RFC with the intent to issue a report on the destruction of WTC7 based on continued adherence to the flawed premises and with the existing conflicts of interest, irrespective of plaintiff having now called attention to them, all as more fully articulated in Exhibit A hereof.

V.

Exhaustion of Remedies

32.    Plaintiff EFHaas has exhausted his administrative remedies, having filed an RFC with NIST, in compliance with the DQA, challenging certain specific aspects of disseminated information and having made specific requests for relief that are presently pending, and which have been acted upon by way of a response dated August 22, 2007 (Exhibit B) that contains admissions of actionable wrongdoing cognizable under the APA and/or Bivens.  Moreover, the harm has been reiterated as of December 18, 2007, the date hereof, in a webcast presentation by NIST wherein and whereby continued deception has been approved in that the evidence of controlled demolition of WTC7 is still being denied, hidden and otherwise not acknowledged.  Plaintiff further states that having received a reply, Exhibit B, he exhausted his administrative remedy as he was not obliged to appeal that determination.  Moreover, the right of appeal afforded by NIST is useless because, by the terms thereof, "no opportunity for personal appearance, oral argument, or hearing on appeal is provided."  Absent a temporary order that would permit a determination of rights and of responsibilities in the present and before any further harm can be done; in other words, for prospective injunctive relief, plaintiff's rights as asserted hereunder would be rendered unreasonable.

VI.

First Claim: Violation of Administrative Procedure Act –
Ultra Vires Agency Action

33.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 36.

17

34.     Under § 706(2)(c) of the Administrative Procedure Act, a reviewing court must set aside any agency action that is "in excess of statutory jurisdiction, authority, or limitations . . ." 5 U.S.C. § 706(2)(c).

35.     The regulations promulgated by the defendants to implement the DQA would be rendered moot in the absence of an agreed upon format for forbearance pending the completion of the RFC process presently pending before NIST.  Indeed, in the absence of such procedure for obtaining forbearance, it is clear that the DQA procedures currently followed by NIST are, were promulgated without any "statutory jurisdiction, authority, or limitations," and must therefore be set aside. 5 U.S.C. § 706(2)(c).

VII.

Second Claim: Violation of Administrative Procedure Act –
Agency Action That Is Arbitrary, Capricious, An Abuse Of
Discretion And Otherwise Not In Accordance With Law
In Promulgating DQA Regulations.

36. Plaintiff incorporates by reference the allegations of paragraphs 1 through 39.

37.     The APA imposes upon the defendants a number of nondiscretionary duties regarding rulemaking procedures. 5 U.S.C. § 553. The APA requires a federal agency to provide adequate notice to the public regarding the nature, scope and effects of any proposed or final agency action. The APA also requires that the federal agency provide the public with a full and

fair opportunity to comment regarding any proposed agency action.  Based upon the filing of his RFC on February 28, 2007, it is clear that even though he has done so, the absence of an agreement for forbearance by NIST pending the outcome of that RFC would render his having filed it moot. The defendants have failed to respond adequately – or at all – to plaintiff's request to be heard on the issue of forbearance.

38.     The APA also requires a federal agency to fully articulate its basis and reasons regarding any final agency action. The defendants have failed to explain adequately the basis and reason(s) for not responding to plaintiff's request for negotiations concerning procedures pending the determination of plaintiff's RFC.

39.     The defendants' failure to comply with the APA's procedural requirements was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Therefore, in refusing to either negotiate with plaintiff concerning forbearance during the pendency of plaintiff's RFC, the defendants violated the APA, and their actions must be set aside.

VIII.

Third Claim: Violation of Administrative Procedure Act –
Arbitrary And Capricious Failure To Abide
By The Standards

40.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

41.     Now that plaintiff has filed an RFC, and received a reply containing admissions of deception and wrongdoing, there exists both actionable harm and standing on the part of plaintiff to pursue this cause of action.

42.     Regulations promulgated by NIST and/or the defendant U.S. Department of Commerce simply do not permit for a meaningful consideration of RFC's in the absence of any procedure allowing for either mandatory or permissible forbearance from action pending the outcome of submitted RFCs.

IX.

Prayer for Relief

43. An order to prevent the defendants from violating the plaintiffs' rights under the Fifth Amendment to the United States Constitution and the Administrative Procedure Act, the plaintiff requests that this Court grant preliminary and permanent injunctive relief barring the defendants from engaging in either all or some specifically designated portions of work on determining the causes of the near-instantaneous destruction of WTC7, until the outcome of plaintiff's presently pending RFC is known.

44. The plaintiff is entitled to a preliminary injunction barring the defendants from engaging in certain additional work on determining the causes of destruction of WTC7 because:

(a) there is a significant likelihood that the plaintiff will prevail on the merits;

(b) the plaintiff will suffer irreparable harm if his RFC is allowed to languish while ongoing work on determining the causes of the destruction continue despite his having raised the serious concerns that he has raised that show how and in what manner that investigation is imperiled;

(c) there is a compelling public interest in ensuring that persons charged with engaging in work for and on behalf of the public not be allowed to steer investigations in a manner so as to produce a false, fraudulent and/or misleading outcome, as will almost certainly happen unless this Court requires that defendants cease and desist from certain designated activities in furtherance of the ongoing WTC7 investigation pending the outcome of plaintiff's presently pending RFC.

45. Plaintiff further request that this Court grant declaratory relief by issuing an Order declaring that the defendants' current means, methods, practices, procedures,

and customs regarding procedures under the DQA violate the Fifth Amendment to the

United States Constitution, and the

Administrative Procedure Act.

46.    Plaintiff requests that this Court grant reasonable attorney fees pursuant to

42 U.S.C. § 1988 and the laws of the United States.

47.    Plaintiff requests that the Court grant such further relief as it deems just

and proper.

THE PLAINTIFF

By_____
Jerry V. Leaphart JL4468
JERRY V. LEAPHART & ASSOC., P.C.
8 West Street, Suite 203
Danbury, CT 06810
(203) 825-6265 - phone
Dated:  Danbury, CT                     (203) 825-6256 - fax
         December 18, 2007              jsleaphart@cs.com